## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. _____

MARIO DEL VALLE, CAROLINA
FERNANDEZ, LUIS FERNANDEZ, MARIO
FERNANDEZ, ELENA DEL VALLE
ARELLANO, ENRIQUE FALLA,
LAUREANO FALLA, MARIO
ECHEVARRIA, ESTHER SANCHEZ,
CONSUELO CUEVAS, and CARMEN
FLORIDO, as individuals and
on behalf of all others similarly situated,

Plaintiffs,

v.

TRIVAGO GmbH, a German limited
liability company, BOOKING.COM B.V., a
Dutch limited liability company, GRUPO
HOTELERO GRAN CARIBE,
CORPORACIÓN DE COMERCIO Y
TURISMO INTERNACIONAL
CUBANACÁN S.A., GRUPO DE
TURISMO GAVIOTA S.A., RAÚL DOE 1-
5, MARIELA ROE 1-5,

Defendants.

_____/

## CLASS ACTION COMPLAINT FOR DAMAGES

Luis Del Valle Esnard, one of the original founders of Varadero, in the province of Matanzas, in Cuba, owned several parcels of land, which, on his passing, were distributed to his children. One of those properties, a beach-front parcel (the "Del Valle Parcel") was passed down to his son Mario Del Valle Sr., and later to Del Valle Sr.'s descendants.[1] In the late 1950's, Mario Del Valle Sr. built a beach home on that property for his family. Laureano Falla Sr., together with his father-in-law, Eugenio Crabb, owned the parcel of land next to Luis Del Valle Esnard (the "Falla Parcel"), and like Mr. Del Valle, built a home for his family (and eventually, his descendants)[2] to enjoy as a beach home.

As for the Angulo Cuevas family,[3] for more than 100 years, they owned the entirety of Cayo Coco. Cayo Coco, being uninhabited, was used by the family and others as a recreational area for swimming, fishing, hunting, and for enjoying the many beaches on the island. Over the years, some limited commercial use was made of Cayo Coco, for the production of charcoal, the raising the livestock, and the production of salt.

But like the Del Valle and Falla families, the Angulo Cuevas family's quiet use and enjoyment of their property came to an abrupt end when Fidel Castro seized power and established a communist government in Cuba which confiscated their property and forced much of the families to flee their native country for the United States. In the case of the Del Valle and Falla families, the communist Cuban government ultimately demolished their homes, along with

---

[1] Plaintiffs Mario Del Valle, Carolina Fernandez, Luis Fernandez, Mario Fernandez, and Elena del Valle Arellano (the "Del Valle Heirs") are the current heirs to the Del Valle Parcel.

[2] Plaintiffs Enrique Falla and Laureano Falla (the "Falla Heirs") are the current heirs to the Falla Parcel.

[3] Plaintiffs Mario Echevarria, Esther Sanchez, Consuelo Cuevas, and Carmen Florido (the "Angulo Cuevas Heirs") are the current heirs to Cayo Coco who are U.S. nationals, and thus entitled to bring this action.

several other nearby homes, and together with Blue Diamond Hotels & Resorts, Inc.,[4] built a hotel—the Starfish Cuatro Palmas (the "Cuatro Palmas").

In the case of the Angulo Cuevas family, after seizing Cayo Coco from the family the communist Cuban government developed the island, and together with various hotel chains, including Blue Diamond, built a number of resorts. Among those resorts are two operated by Blue Diamond—the Memories Flamenco and the Memories Caribe (the "Cayo Coco Resorts"). The Cuatro Palmas and the Cayo Coco Resorts are offered to visitors directly through Blue Diamond's own websites, including to Florida and other U.S. residents. But travelers, including Florida and other U.S. residents, are also able to book stays at the Cuatro Palmas and the Cayo Coco resorts through online booking providers like Trivago, a subsidiary of Expedia, Inc., as well as Booking.com.[5]

Together, the Cuban government, Blue Diamond, Expedia Entities, and the Booking Entities have exploited and benefitted from the Del Valle, Falla, and Angulo Cuevas families' property for decades without paying them—the rightful owners—any compensation whatever. The Plaintiff Heirs now sue to right the defendants' unlawful trafficking in their property and for just compensation for themselves and persons who are in a similar situation.

---

[4] In accordance with 22 U.S.C. § 6082(a)(3), the Del Valle, Falla, and Angulo Cuevas Heirs (collectively, the "Plaintiff Heirs") have given notice to Blue Diamond Hotels & Resorts, Inc. and its corporate parent, Sunwing Travel Group, Inc. (collectively "Blue Diamond") of their intent to add Blue Diamond as a defendant to this lawsuit if they do not promptly compensate the Plaintiff Heirs and the class for the unlawful trafficking of their property.

[5] In accordance with 22 U.S.C. § 6082(a)(3), the Plaintiff Heirs have given notice to Expedia, Inc., together with its affiliates Hotels.com L.P., Hotels.com GP, LLC, Orbitz, LLC, Travelocity.com, LP (collectively, including defendant Trivago, the "Expedia Entities"), as well as Booking Holdings Inc. (together with defendant Booking.com B.V., the "Booking.com Entities"), of their intent to add them as defendants to this lawsuit if they do not promptly compensate the Plaintiff Heirs and the class for the unlawful trafficking of their property.

## THE ACTION

1.      The Plaintiff Heirs, on behalf of themselves and a class of similarly-situated persons, sue defendants Grupo Hotelero Gran Caribe ("Gran Caribe"), Corporación de Comercio y Turismo Internacional Cubanacán S.A. ("Cubanacán"), Grupo de Turismo Gaviota S.A. ("Gaviota"), Raúl Does 1-5, Mariela Roes 1-5, Trivago GmbH ("Trivago"), and Booking.com B.V. ("Booking.com") under the Cuban Liberty and Democratic Solidarity Act, 22 U.S.C. § 6021, *et seq.* (the "LIBERTAD Act"), for unlawful trafficking in their confiscated property in Cuba.

## THE PARTIES

2.      Mario Del Valle is a United States citizen and a natural person who resides in Miami, Florida.

3.      Carolina Fernandez is a United States citizen and a natural person who resides in Miami, Florida.

4.      Luis Fernandez is a United States citizen and a natural person who resides in Miami, Florida.

5.      Mario Fernandez is a United States citizen and a natural person who resides in Miami, Florida.

6.      Enrique Falla is a United States citizen and a natural person who resides in Miami, Florida.

7.      Laureano Falla is a United States citizen and a natural person who resides in Miami, Florida.

8.      Elena Del Valle Arellano is a United States citizen and a natural person who resides in Miami, Florida.

9.     Mario Echevarria is a United States citizen and a natural person who resides in Miami, Florida.

10.     Esther Sanchez is a United States citizen and a natural person who resides in Miami, Florida.

11.     Consuelo Cuevas is a United States citizen and a natural person who resides in Miami, Florida.

12.     Carmen Florido is a United States citizen and a natural person who resides in Miami, Florida.

13.     Defendant Gran Caribe is a "Sociedad Anónima" incorporated in Cuba, with its principal place of business at 7ma. Avenida No. 4210 entre 42 y 44, Miramar, Playa, La Habana, Cuba. Gran Caribe is an agency or instrumentality of the government of Cuba.

14.     Defendant Cubanacán is a "Sociedad Anónima" incorporated in Cuba, with its principal place of business at Calle 23 No. 156 entre N y O, Vedado, Plaza de la Revolución, La Habana, Cuba. Cubanacán is an agency or instrumentality of the government of Cuba.

15.     Defendant Gaviota is a "Sociedad Anónima" incorporated in Cuba, with its principal place of business at Edificio La Marina, 3er. Piso. Ave del Puerto No. 102 entre Justiz y Obrapía, La Habana, Cuba. Gaviota is an agency or instrumentality of the government of Cuba.

16.     Raúl Does 1-5 and Mariela Roes 1-5 are as-yet-unknown members of the Cuban government who, on information and belief, are associated with, and benefit from, the trafficking of confiscated property belonging to the Angulo/Cuevas Heirs and to the class members.

17.     Defendant Trivago GmbH, an affiliate of Expedia, Inc., is a German limited liability company headquartered in Düsseldorf, Germany, with offices in New York, New York.

18.     Defendant Booking.com B.V. is a Dutch limited liability company based in Amsterdam, the Netherlands, with its principal place of business in Amsterdam. Booking.com B.V. owns and operates Booking.com.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because this action arises under the LIBERTAD Act (22 U.S.C. § 6082) and the amount in controversy exceeds $50,000, excluding interest, costs, and attorneys' fees.

20.     This Court has personal jurisdiction over defendants Gran Caribe, Cubanacán, and Gaviota under 28 U.S.C. § 1330 once service is made under 28 U.S.C. § 1608 because Gran Caribe, Cubanacán, and Gaviota are a foreign state as defined by 28 U.S.C. § 1603.

21.     The Court has personal jurisdiction over Raúl Does 1-5 and Mariela Roes 1-5 under Fed. R. Civ. P. 4(k).

22.     The Court has personal jurisdiction over Trivago and Booking.com under Fla. Stat. §§ 48.193(1)(a)(1) and (6)

23.     Venue is proper in this District under 28 U.S.C. § 1391(c)(3) because Gran Caribe, Cubanacán, Gaviota, Raúl Does 1-5 and Mariela Roes 1-5 are not United States residents and because Trivago and Booking.com are deemed to be residents of Florida under 28 U.S.C. §§ 1391(c)(2) and (d).

## THE LIBERTAD ACT

24.     In 1996, in response to the communist Cuban government's murder of four civilian pilots performing humanitarian work with the Cuban-American group Brothers to the Rescue, Congress enacted the LIBERTAD Act to strengthen sanctions against the communist

Cuban government and deter the exploitation of wrongfully confiscated property in Cuba belonging to U.S. nationals.

25.     Title III of the LIBERTAD Act provides U.S. nationals whose property in Cuba had been confiscated by the communist Cuban government with a right of action against those who traffic in that property. 22 U.S.C. §§ 6081-6085.

26.     Since the LIBERTAD Act's enactment more than twenty years ago, successive Presidents of the United States suspended the right of action provided by Title III. As of May 2, 2019, the suspension was not renewed. The Plaintiff Heirs and the class members are now permitted to file suit under the LIBERTAD Act.

## FACTUAL ALLEGATIONS

### A.     The Properties

*The Varadero Properties*

27.     Luis Del Valle Esnard, the Del Valle Family's patriarch, was one of the founders of Varadero, and owned several parcels of beachfront property in a prime location in Varadero bordered on the West by Calle 62, the East by Calle 64, the South by a vacant lot running along Avenida Primera, and on the North by the ocean.

28.     On the passing of Luis Del Valle Esnard, his property was distributed pursuant to a will to his children, including Mario Del Valle Sr., who received the property which is the subject of this action.

29.     In the late 1950's, Mario Del Valle Sr. had a house built on his lot, which had, until that time, remained vacant, for his family to use as a beach home (the "Del Valle Property").

30.     Laureano Falla, together with his father-in-law, Eugenio Crabb, owned the parcel of land next to Luis Del Valle Esnard, and like Mr. Del Valle, built a home for his family on that property to enjoy as a beach home (the "Falla Property").

31.     On January 1, 1959, Fidel Castro took power in Cuba and instituted a communist regime. Shortly thereafter, in the early 1960's, the Cuban government confiscated the Del Valle and Falla Properties, as it ultimately did with all privately-owned property on the island.

32.     In or around 1991, Blue Diamond developed the Del Valle and Falla Properties, which had since been razed, along with the property on which several other adjoining homes formerly sat, and built the Cuatro Palmas. Since its construction, Blue Diamond has operated, and continues to operate, the property together with Gran Caribe.

33.     Vacation packages at the all-inclusive Cuatro Palmas can be reserved directly from Blue Diamond through its website, or through the Expedia and Booking.com Entities, securing those reservations with a credit card. The booking of reservations online through either Blue Diamond or through the Expedia and Booking.com Entities is available to U.S. residents, including Florida residents.

*Cayo Coco*

34.     The Angulo Cuevas family owned the entirety of Cayo Coco, an island off the North Coast of Cuba, near the city of Morón. The island, which spans 370 square kilometers, is bordered by Morón to the South, Cayo Romano to the East, the Atlantic to the North, and Cayo Guillermo to the West. It is connected to the Cuban "mainland" near Morón by a 17-km long causeway, and to the world at large by Jardines del Rey International Airport.

Cayo Coco, when inherited by Julian Cuevas and his wife Isabel Angulo from Isabel's father, was a virgin island, undeveloped and reserved for the family's recreational use for

swimming, fishing, hunting, and for enjoying the many beaches on the island. Over the years, some limited commercial use was made of Cayo Coco, in the form of production of charcoal, the raising the livestock, and the production of salt. No large-scale development of the island was ever undertaken by the Cuevas/Angulo family.

35.    On August 16, 1960, the communist Cuban government confiscated Cayo Coco from the Angulo Cuevas family. Shortly thereafter, many of the family members, including the Angulo Cuevas Heirs, fled Cuba to the United States, where they lived ever since.

36.    Throughout the decades following the confiscation of Cayo Coco, Gran Caribe, together with Blue Diamond, developed the Cayo Coco Resorts. Vacation packages at the Cayo Coco Resorts can be reserved either directly from Blue Diamond through its website, or through Trivago, securing those reservations with a credit card. The booking of reservations online through either Blue Diamond or through Trivago is available to U.S. residents, including Florida residents.

**B.    *Succession Rights to the Properties***

37.    As of the time of filing this lawsuit, the Del Valle Heirs are the rightful owners of the Del Valle Property, which is being trafficked by Gran Caribe, Blue Diamond, and the Expedia and Booking.com Entities.

38.    As of the time of filing this lawsuit, the Falla Heirs are the rightful owners of the Falla Property, which is being trafficked by Gran Caribe, Blue Diamond, and the Expedia and Booking.com Entities.

39.    As of the time of filing this lawsuit, the Angulo/Cuevas Heirs, together with certain non-U.S. national descendants, are the rightful owners of Cayo Coco, which is being trafficked by Gran Caribe, Blue Diamond, and the Expedia and Booking.com Entities.

**C.     *Defendants and the Expedia and Booking.com Entities Have Trafficked the Del Valle and Falla Properties, as well as Cayo Coco, Without Compensating the Del Valle, Falla, or Angulo Cuevas families***

40.     Neither the communist Cuban government, nor any of the defendants and their accessories, the Expedia and Booking.com Entities, has ever paid—and the Del Valle, Falla, and Angulo Cuevas families have never received—any compensation whatsoever for the trafficking of the Del Valle or Falla Properties or Cayo Coco, respectively.

41.     The Plaintiff Heirs were not eligible to file a claim with the Foreign Claims Settlement Commission under Title V of the International Claims Settlement Act of 1949 (22 U.S.C. § 1643 *et seq.*) because they were not U.S. citizens at the time their respective properties were confiscated.

42.     Neither the Del Valle and Falla Properties, nor Cayo Coco, have been the subject of a certified claim under Title V of the International Claims Settlement Act of 1949 (22 U.S.C. § 1643 *et seq.*).

**D.     *The Joint Venture***

43.     Gran Caribe and Blue Diamond operate in a joint venture by which they receive, possess, obtain control of, manage, use, or otherwise acquire or hold an interest in confiscated property and engage in commercial activity involving the use of or otherwise benefitting from confiscated property. Among these properties are the Cuatro Palmas, in Varadero, which sits upon the Del Valle and Falla Properties (among others), and the Cayo Coco Resorts, which sit upon Cayo Coco.

**E.     *The Expedia Entities***

44.     Expedia, Inc. is the corporate parent company for a number of brands, including Trivago. In fact, Expedia, Inc. lists a total of 21 subsidiaries or affiliates, through which it

maintains more than 200 travel booking sites across more than 70 countries, and through which it offers more than 1 million properties for rent.



https://www.expediagroup.com/about/

45.     According to Expedia, Inc.'s most recent 10-K filing, the Expedia Entities "make travel products and services available both on a stand-alone and package basis, primarily through the following business models: the merchant model, the agency model and the advertising model." Expedia, Inc., Annual Report (Form 10-K) (Feb. 14, 2018) at 5.

> Under the merchant model, we facilitate the booking of hotel rooms, airline seats, car rentals and destination services from our travel suppliers and we are the merchant of record for such bookings. The majority of our merchant transactions relate to hotel bookings. Under the agency model, we facilitate travel bookings and act as the agent in the transaction, passing reservations booked by the traveler to the relevant travel provider. We receive commissions or ticketing fees from the travel supplier and/or traveler.
>
> *        *        *
>
> Under the advertising model, we offer travel and non-travel advertisers access to a potential source of incremental traffic and transactions through our various media and advertising offerings on trivago and our transaction-based websites.

*Id.* at 5-6.

46.     When the Expedia Entities operate under the merchant model, customers "pay [the Expedia Defendants] for merchant hotel transactions prior to departing on their trip, generally when they book the reservation." *Id.* at F-10. As to how the Expedia Entities profit from this model, they "generally contract in advance with lodging providers to obtain access to rooms at negotiated rates" then re-sell the rooms to its customers at a profit. *Id.* at F-11.

47.     When the Expedia Entities operate under the agency model, the Expedia Entities "act as the agent in the transaction, passing reservations booked by the traveler to the relevant travel provider" and "receive commissions or ticketing fees from the travel supplier and/or traveler." *Id.* at F-10.

48.     The Expedia Entities all provide online booking services for hotels in Cuba, including those operated by Meliá, Blue Diamond, Iberostar, Be Live, Barceló, and others. For example, Expedia.com lists a total of 3,711 properties available for rent throughout Cuba,

including 15 Blue Diamond properties, 3 Iberostar properties, 23 Meliá properties, 3 Be Live properties, and 3 Barceló properties. These properties include the Cuatro Palmas and the Cayo Coco Resorts.

## F.     *The Booking.com Entities*

49.     Like Expedia Inc., Booking Holdings is the corporate parent company for a number of brands, including Booking.com, Kayak, Priceline, Agoda, Rentalcars.com, and OpenTable. Booking Holdings, Inc., Annual Report (Form 10-K) (Feb. 27, 2019) at 1.

50.     According to Booking Holdings, its "business is driving primarily by international results, which consist of the results of Booking.com, agoda, and Rentalcars.com and the international business of KAYAK and OpenTable." *Id.* Booking Holdings clarifies, however, that its characterization of the majority of its business as "international" is "independent of where the consumer resides, where the consumer is physically located while using our services or the location of the travel service provider or restaurant. For example, a reservation made through Booking.com at a hotel in New York for a consumer in the United States is part of our international results." *Id.*

51.     The "substantial majority," or 89%, of Booking Holdings' "international"—by Booking Holdings' definition of "international"—business is generated by defendant Booking.com. *Id.*

52.     The Booking.com Entities operate under both an agency model and a merchant model:

- Agency revenues are derived from travel-related transactions where we do not receive payments from travelers for the services provided. We invoice the travel service providers for our commissions after travel is completed. Agency revenues consist almost entirely of travel reservation commissions, as well as certain GDS reservation booking fees and certain travel insurance fees.

- Merchant revenues are derived from travel-related transactions where we receive payments from travelers for the service provided, generally at the time of booking. Merchant revenues include travel reservation commissions and transaction net revenues (i.e., the amount charged to travelers less the amount owed to travel service providers) in connection with our merchant reservation services; ancillary fees, including travel insurance-related revenues and certain GDS reservation booking fees; and credit card processing rebates and customer processing fees. Substantially all merchant revenues are for merchant services derived from transactions where travelers book accommodation reservations or rental car reservations from travel service providers.

*Id.* at 2. Under these models, along with advertising through KAYAK, Booking Holdings had revenues of $14.5 billion. *Id.*

53.     "Booking.com is the world's leading brand for booking online accommodation reservations, based on room nights booked, with operations worldwide and headquarters in the Netherlands." *Id.* at 4.

54.     Defendant Booking.com provides online booking services for hotels in Cuba, including those operated by Meliá, Blue Diamond, Iberostar, Be Live, Barceló, and others. For example, Booking.com lists a total of 6,500 properties available for rent across Cuba, including 9 Iberostar properties, 19 Meliá properties, 5 Blue Diamond properties, 3 Be Live properties, and 3 Barceló properties. These properties include the Cuatro Palmas and the Cayo Coco Resorts.

## CLASS REPRESENTATION ALLEGATIONS

55.     Under Fed. R. Civ. P. 23, the Plaintiff Heirs bring this suit and seek class certification of the claim alleged here and a damages judgment against defendants for themselves and on behalf of the class.

56.     The class is defined as follows and consists of:

All U.S. nationals (as defined at 22 U.S.C. § 6023(15)) who own property (as defined at 22 U.S.C. § 6023(12)) in Cuba that was expropriated by the government of Cuba prior to March 12, 1996, and has been trafficked by an agency or instrumentality of Cuba together with Blue Diamond, in many instances with the assistance of Expedia or Booking.com Entities, without prior authorization of, or absent compensation to, such

U.S. nationals, where such U.S. national was not eligible to file a claim with the Foreign Claims Settlement Commission under Title V of the International Claims Settlement Act of 1949 (22 U.S.C. § 1643 et seq.), and no certified claim to the property exists.

This class definition excludes (a) the defendants, their officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.

**A.    *Federal Rule of Civil Procedure 23(a)***

57.    Fed. R. Civ. P. 23(a) provides for class certification where the representative plaintiffs demonstrate that:

> 1.    the class is so numerous that joinder of all members is impracticable;
>
> 2.    there are questions of law or fact common to the class;
>
> 3.    their representative claims or defenses are typical of the claims or defenses of the class; and
>
> 4.    they will fairly and adequately protect the interests of the class.

*(1)    Numerosity*

58.    On information and belief, the class consists of hundreds of persons. Blue Diamond operates at least 18 hotels, resorts, and other tourist attractions in several locations throughout Cuba, rendering individual joinder of each class member impracticable.

*(2)    Commonality*

59.    The Plaintiff Heirs and the class have claims that raise common questions of law or fact.

60.    This is an action in which the Plaintiff Heirs and the class members assert claims alleging the same theory of recovery, namely, that they are entitled to damages from the defendant for its wrongful trafficking of their property.

61.     The Plaintiff Heirs' and class members' claims arise from the same practice or course of conduct: defendant's trafficking of confiscated properties used in the hospitality and tourism industry for its own economic gain.

62.     The Plaintiff Heirs' and class members' damages were caused by the same practice or course of conduct: defendants' unlawful trafficking in their property without prior authorization or compensation to the rightful owners.

63.     The Plaintiff Heirs' and class members' claims raise common questions of law or fact, including, but not limited to, whether:

a.     The communist Cuban government nationalized, expropriated, or seized property without providing the owners with adequate or effective compensation;

b.     The confiscation of property occurred before March 12, 1996;

c.     Defendants trafficked in that confiscated property; and

d.     Defendants knew or had reason to know that the trafficked property had been confiscated.

(3)     *Typicality*

64.     The Plaintiff Heirs' claims are typical of class member claims because they are based on the same legal theory, arise from a similar core set of facts, and are not subject to any unique defenses. Members of the class have sustained, and will continue to sustain, damages in the same manner as the Plaintiff Heirs as a result of defendants' conduct.

(4)     *Adequacy of Representation*

65.     The Plaintiff Heirs and their counsel will fairly and adequately protect and represent the interest of the class members.

66.     The Plaintiff Heirs are members of the class defined above. As representative plaintiffs, they are committed to the active and vigorous prosecution of this action and have

16

engaged competent counsel experienced in litigation of this nature, who possess the resources and commitment to vigorously prosecute this case to a successful resolution.

67.     There is no hostility of interests between the Plaintiff Heirs and other class members. The Plaintiff Heirs have no claims that are antagonistic to the claims of other class members, and reasonably anticipate no difficulty in the management of this litigation as a class action.

**B.     *Federal Rule of Civil Procedure 23(b)***

68.     This class action is maintainable under Rule 23(b)(3).

*(1)     Predominance*

69.     In this case, common liability issues of law and fact predominate over any hypothetical or potential individualized issues, because the Plaintiff Heirs' and class members' claims arise from a common nucleus of operative fact and share, among other things, the common issues of law and fact set forth above. The predominant common issue in this action is whether defendants knew, or had reason to know, that they trafficked in confiscated property.

*(2)     Superiority*

70.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation because it is the most manageable and efficient way to resolve the individual claims of each class member.

71.     Specifically, a class action will provide class members with what may be their only economically viable remedy. Moreover, there are no known class members who are interested in individually controlling the prosecution of separate actions. In addition, a class action will concentrate all litigation in one forum, which will conserve judicial and party resources with no unusual manageability problems.

**C.     *National Issues Class under Fed. R. Civ. P. 23(c)(4)***

72.     In the alternative, the Plaintiff Heirs seek to bring and maintain a national issues class under Fed. R. Civ. P. 23(c)(4).

73.     Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

74.     In order to materially advance this litigation, the Plaintiff Heirs bring this action on behalf of themselves and the Class Members to resolve several critical, class-wide issues, including whether:

    a.    defendants entered into a joint venture or other contractual arrangement that arranged for the use of confiscated property;

    b.    defendants engaged in a commercial activity using or otherwise benefitting from the use of confiscated property;

    c.    defendants sold, transferred, managed, used, or acquired an interest in confiscated property; and

    d.    defendants knew or had reason to know that the property they used or benefitted from was confiscated.

75.     The Issues Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

    a.    Numerosity: Individual joinder of the Issues class members would be wholly impracticable. There are hundreds of persons throughout the United States whose property was confiscated by the communist Cuban government and in which defendants traffic. Thus, the numerosity element for class certification is satisfied;

    b.    Commonality: Questions of law and fact are common to the Issues class members' claims. As this is an issues class under Rule 23(c)(4), there are, by definition, common questions of law applicable to all class members' claims:

    c.    Typicality: The Plaintiff Heirs' claims are typical of Issues class members' claims because all the claims arise from the same course of conduct by

defendants, i.e., defendants' trafficking in confiscated property. Therefore, the Plaintiff Heirs' claims are typical of the issues class members' claims;

d.    Adequacy: The Plaintiff Heirs will fairly and adequately represent and protect the interests of the Issues class members. The Plaintiff Heirs' interest in vindicating their claims is shared with all Issues class members, and there are no conflicts between the named plaintiffs and putative Issues class members. Further, the Plaintiff Heirs are represented by counsel who are competent and experienced in class action litigation and have no conflicts.

76.    This Issues class also is maintainable under Rule 23(b)(3) because common liability issues of law and fact predominate over any hypothetical or potential individualized issues. The Plaintiff Heirs' and issues class members' claims arise from a common nucleus of operative fact and share, among other things, the common issues of law and fact set forth above. The predominant common issue in this action is whether defendants knew, or had reason to know, that they trafficked in confiscated property. A class action is superior to other available methods for the fair and efficient adjudication of this overarching issue, and this litigation, because class treatment affords the most manageable and efficient way to resolve the individual claims of each Issues class member. Class treatment will provide Issues class members with what may be their only economically viable remedy. Moreover, there are no known Issues class members who are interested in individually controlling the prosecution of separate actions. In addition, a class action will concentrate all litigation in one forum, which will conserve judicial and party resources with no unusual manageability problems.

**CAUSE OF ACTION**

**COUNT I**
**Private Right of Action Under 22 U.S.C. § 6082(a)(1)**
**Against All Defendants**

77.    The Plaintiff Heirs incorporate by reference paragraphs 1 to 76 as if fully set forth here.

78.     This claim is brought under Title III of the LIBERTAD Act, 22 U.S.C. § 6082.

79.     Defendants are "persons" as defined by 22 U.S.C. § 6023(11).

80.     The Plaintiff Heirs and the class members had their property confiscated by the communist Cuban government.

81.     Defendants Gran Caribe, Cubanacán, and Gaviota, together with Blue Diamond, entered into joint ventures for the purpose of trafficking in confiscated properties for use as hotel or other hospitality venues, including the Cuatro Palmas and the Cayo Coco Resorts, which trafficking continues to this day, in violation of Title III of the LIBERTAD ACT.

82.     Defendants Trivago and Booking.com, together with the Expedia and Booking.com Entities also have used or benefitted from the confiscated properties by offering, for economic benefit, reservations at the Cuatro Palmas and Cayo Coco Resorts, which trafficking continues to this day, in violation of Title III of the LIBERTAD ACT.

83.     On information and belief, officials of the Cuban government and its defendant instrumentalities, including Raúl Does 1-5 and Mariela Roes 1-5 have, throughout the years, also participated in and profited from trafficking in confiscated properties, including the Del Valle and Falla Properties and Cayo Coco.

84.     Defendants Gran Caribe, Cubanacán, Gaviota, Raúl Does 1-5, Mariela Roes 1-5, Trivago, and Booking.com together with Blue Diamond and the Expedia and Booking.com Entities, have conducted this trafficking "without the authorization of any United States national who holds a claim to the property" (22 U.S.C. § 6023(13)) in violation of Title III of the LIBERTAD Act.

85.     Accordingly, the Plaintiff Heirs and the class members are entitled to damages to be determined under 22 U.S.C. § 6082(a)(1)(A)(i), along with attorneys' fees and costs under 22 U.S.C. § 6082(a)(1)(A)(ii).

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff Heirs, individually and on behalf of the class members, demand the following relief:

(a)     A finding that this action satisfies the prerequisites for maintenance of a class action under Federal Rule of Civil Procedure 23(a) and (b)(3), and a certification of class;

(b)     Designation of the Plaintiff Heirs as representatives for the class and their undersigned counsel as class counsel for the class; and

(c)     A judgment against defendants that:

i.      Awards actual damages in an amount to be determined under 22 U.S.C. § 6082(a)(1)(A)(i);

ii.     Awards reasonable attorneys' fees and costs incurred in this action under 22 U.S.C. § 6082(a)(1)(A)(ii);

iii.    Awards appropriate post-judgment interest; and

iv.     Grants all other relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury on all issues so triable.

Dated: June 24, 2019

Respectfully submitted,

**RIVERO MESTRE LLP**
2525 Ponce de Leon Blvd., Suite 1000
Coral Gables, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505
E-mail: arivero@riveromestre.com

E-mail: jmestre@riveromestre.com
E-mail: crodriguez@riveromestre.com

By: _____

ANDRÉS RIVERO
Florida Bar No. 613819
JORGE A. MESTRE
Florida Bar No. 88145
ALAN ROLNICK
Florida Bar No. 715085
CARLOS A. RODRIGUEZ
Florida Bar No. 0091616

**MANUEL VAZQUEZ, P.A.**
2332 Galiano St., Second Floor
Coral Gables, Florida 33134
Telephone: (305) 445-2344
Facsimile: (305) 445-4404
E-mail: mvaz@mvazlaw.com

By: _____

MANUEL VAZQUEZ
Florida Bar No. 132826