UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 19-cv-22619-RNS

_____

**Mario Del Valle, Enrique Falla,** and **Angelo Pou**, as individuals and on behalf of all others similarly situated,

        Plaintiffs,

v.

**Expedia, Inc., Hotels.com L.P., Hotels.com GP, Orbitz, LLC, Booking.com B.V.,** and **Booking Holdings Inc.,**

        Defendants.

_____

**DEFENDANTS EXPEDIA, INC., HOTELS.COM L.P.,
HOTELS.COM GP, LLC, AND ORBITZ, LLC'S MOTION
TO DISMISS FOR LACK OF PERSONAL JURISDICTION,
LACK OF SUBJECT MATTER JURISDICTION, AND FAILURE TO
STATE A CLAIM, AND INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................................. i

TABLE OF AUTHORITIES ............................................................................................................ ii

INTRODUCTION ........................................................................................................................ 1

BACKGROUND .......................................................................................................................... 2

    A.    The Helms-Burton Act ................................................................................ 2

    B.    Procedural History ..................................................................................... 3

    C.    Plaintiffs' Current Allegations .................................................................. 3

    D.    The Expedia Entities .................................................................................. 5

ARGUMENT & AUTHORITIES ..................................................................................................... 6

    A.    Lack of Personal Jurisdiction .................................................................... 6

        1.    Plaintiffs fail to allege a prima facie case of general jurisdiction. ...... 7

        2.    Plaintiffs fail to allege a prima facie case of specific jurisdiction. ..... 8

    B.    Lack of Subject Matter Jurisdiction – No Standing ................................ 10

    C.    Failure to State a Claim ............................................................................ 12

        1.    Plaintiffs fail to plead an actionable ownership interest under Title III. ..................................................................................................... 12

        2.    Plaintiffs fail to adequately plead trafficking. ...................................... 14

        3.    The Properties do not constitute "property" under the Act. .............. 17

CONCLUSION .......................................................................................................................... 18

REQUEST FOR HEARING ......................................................................................................... 18

4824-8338-6551

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Access for the Disabled v. First Subway, LLC.*,
  No. 10-61131-CIV, 2010 WL 11596384 (S.D. Fla. Oct. 4, 2010) .................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................................... 12, 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................................12

*Benjamin v. CitiMortgage, Inc.*,
  No. 0:12-cv-62291-FAM, 2013 WL 1891284 (S.D. Fla. May 6, 2013) .......................................14

*Black Diamond Land Mgmt. LLC v. Twin Pines Coal Inc.*,
  707 F. App'x 576 (11th Cir. 2017) ...........................................................................................13

*BNSF Ry. Co. v. Tyrrell*,
  137 S. Ct. 1549 (2017)...............................................................................................................8

*Bochese v. Town of Ponce Inlet*,
  405 F.3d 964 (11th Cir. 2005) ........................................................................................... 10, 11

*Borislow v. Canaccord Genuity Group Inc.*,
  No. 9:14-cv-80134-KLR, 2014 WL 12580259 (S.D. Fla. June 27, 2014).....................................6

*Camreta v. Greene*,
  131 S. Ct. 2020 (2011)..............................................................................................................15

*Carmouche v. Tamborlee Mgmt., Inc.*,
  789 F.3d 1201 (11th Cir. 2015) ..................................................................................................7

*Daimler AG v. Bauman*, 571 U.S. 117 (2014)...............................................................................7

*Empresa Cubana Exportadora de Alimentos y Productos Varios v. U.S. Dept. of Treasury*,
  606 F. Supp. 2d 59 (D.D.C. 2009)............................................................................................16

*Fast SRL v. Direct Connection Travel LLC*,
  No. 1:17-cv-20900, 2018 WL 7822711 (S.D. Fla. Aug. 3, 2018)............................................ 7, 9

*Fish v. Kobach*,
  840 F.3d 710 (10th Cir. 2016) ..................................................................................................16

ii

*Gables Ins. Recovery v. United Healthcare Ins. Co.*,
    39 F. Supp. 3d 1377 (S.D. Fla. 2013) ............................................................................15

*Garcia- Bengochea v. Carnival Corp.*,
    No. 1:19-cv-21725, 2019 WL 4015576, at *3–4 (S.D. Fla. Aug. 26, 2019) ................................15

*Gonzalez v. Amazon.com, Inc.*,
    No. 1:19-cv-23988-RNS, 2020 WL 1169125 (S.D. Fla. Mar. 11, 2020) ............. 2, 12, 13, 14, 15

*Havana Docks Corp. v. Carnival Corp.*,
    No. 1:19-cv-21724-BB, (S.D. Fla. Aug. 28, 2019) ........................................................15

*Hollywood Mobile Estates Ltd. v. Seminole Tribe of Florida*,
    641 F.3d 1259 (11th Cir. 2011) .............................................................................11

*In re Takata Airbag Products Liab. Litig.*,
    396 F. Supp. 3d 1101 (S.D. Fla. 2019) ......................................................................6

*Jones v. Bock*,
    549 U.S. 199 (2007) .........................................................................................16

*Kawa Orthodontics, LLP v. Sec'y, U.S. Dept. of the Treasury*,
    773 F.3d 243 (11th Cir. 2014) ......................................................................... 11, 12

*Lemoine v. Wong*,
    No. 0:17-cv-60099-UU, 2017 WL 5127592 (S.D. Fla. Mar. 29, 2017) ...................................9

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992 ..........................................................................................10

*Madara v. Hall*,
    916 F.2d 1510 (11th Cir. 1990) ......................................................................... 6, 10

*McCulloch v. Maryland*,
    17 U.S. 316 (1819) ..........................................................................................17

*McCullough v. Royal Caribbean Cruises, Ltd.*,
    268 F. Supp. 3d 1336 (S.D. Fla. 2017) ......................................................................7

*Michel v. NYP Holdings, Inc.*,
    816 F.3d 686 (11th Cir. 2016) .............................................................................14

*Monroe v. CitiMortgage, Inc.*,
    No. 8:07-cv-0066-SCB-TGW, 2007 WL 1560194 (M.D. Fla. May 29, 2007) ...........................15

*Nat. Resources Def. Council, Inc. v. Thomas,*
    838 F.2d 1224 (D.C. Cir. 1988) .................................................................17

*Oldfield v. Pueblo De Bahia Lora, S.A.,*
    558 F.3d 1210 (11th Cir. 2009) ................................................................10

*Oxford Asset Mgmt., Ltd. v. Jaharis,*
    297 F.3d 1182 (11th Cir. 2002) ......................................................... 12, 13

*Prunty v. Arnold & Itkin LLP,*
    753 F. App'x 731 (11th Cir. 2018) ............................................................9

*Quiller v. Barclays American/Credit, Inc.,*
    727 F.2d 1067 (11th Cir. 1984) ...............................................................16

*R.W. v. Georgia Dept. of Educ.,*
    353 F. App'x 422 (11th Cir. 2009) ..........................................................11

*Region 8 Forest Service Timber Purchasers Council v. Alcock,*
    993 F.2d 800 (11th Cir. 1993) .................................................................10

*RG Golf Ware-house, Inc. v. Golf Warehouse, Inc.,*
    362 F. Supp. 3d 1226 (M.D. Fla. 2019) ....................................................9

*RJR Nabisco, Inc. v. United States,*
    955 F.2d 1457 (11th Cir. 1992) ...............................................................17

*Schaffer v. Weast,*
    546 U.S. 49 (2005) ...................................................................................15

*Sculptchair, Inc. v. Century Arts, Ltd.,*
    94 F.3d 623 (11th Cir. 1996) .....................................................................6

*Serra-Cruz v. Carnival Corp.,*
    400 F. Supp. 3d 1354 (S.D. Fla. 2019) .....................................................8

*Slaihem v. Sea Tow Bahamas Ltd.,*
    148 F. Supp. 2d 1343 (S.D. Fla. 2001) .....................................................6

*Snow v. DirecTV, Inc.,*
    450 F.3d 1314 (11th Cir. 2006) ............................................................ 6, 9

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016) .............................................................................10

iv

*Storms v. Haugland Energy Grp., LLC,*
  No. 9:18-cv-80334, 2018 WL 4347603 (S.D. Fla. Aug. 17, 2018) ................................9

*Swann v. Sec'y, Georgia,*
  668 F.3d 1285 (11th Cir. 2012) ...................................................................... 11, 12

*Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, & Stevens, P.A.,*
  525 F.3d 1107 (11th Cir. 2008) ................................................................................15

*U.S. v. $304,050.00 in U.S. Currency,*
  No. 2:12-cv-138-FTM-29, 2012 WL 4953126 (M.D. Fla. Oct. 17, 2012) ..................13

*United Techs. Corp. v. Mazer,*
  556 F.3d 1260, 1274 (11th Cir. 2009 ........................................................................6

*Waite v. All Acquisition Corp.,*
  901 F.3d 1307 (11th Cir. 2018) ........................................................................ 8, 10

*Waite v. Union Carbide Corp.,*
  139 S. Ct. 1384 (2019) ...............................................................................................8

*Walden v. Fiore,*
  571 U.S. 277 (2014) ...................................................................................................6

*Waldman v. Palestine Liberation Org.,*
  835 F.3d 317 (2d Cir. 2016) ......................................................................................7

*Wehunt v. Ledbetter,*
  875 F.2d 1558 (11th Cir. 1989) ........................................................................ 11, 12

**Statutes**

22 U.S.C. § 6021 ......................................................................................................... 1, 15

*22 U.S.C. § 6023(12)(B)* .............................................................................................. 2, 17

22 U.S.C. § 6023(13)(A) ............................................................................................... 2, 14

22 U.S.C. § 6023(13)(A)(ii) ...............................................................................................14

22 U.S.C. § 6023(13)(B) ............................................................................................... 3, 14

22 U.S.C. § 6023(13)(B)(iii) ...............................................................................................14

22 U.S.C. § 6082(a) .............................................................................................................2

22 U.S.C. § 6085(c) ............................................................................................................. 3

31 C.F.R. § 515 ................................................................................................................... 16

31 C.F.R. § 515.560(a) ....................................................................................................... 16

31 C.F.R. § 515.572(a) ....................................................................................................... 16

31 C.F.R. § 515.582 ........................................................................................................... 15

FLA. STAT. § 48.193(1)(a) ................................................................................................... 9

FLA. STAT. § 48.193(1)(a)(1) ........................................................................................ 7, 8, 9

FLA. STAT. § 48.193(1)(a)(6) ........................................................................................ 7, 8, 9

FLA. STAT. § 48.193(2) ........................................................................................................ 7

**Other Authorities**

BLACK'S LAW DICTIONARY (11th ed. 2014) ...................................................................... 16

H.R. REP. NO. 104-468, at 44 (1996) (Conf. Rep.) ........................................................ 17

MERRIAM-WEBSTER.COM .................................................................................................. 16

**Rules**

Rule 12(b)(1) ............................................................................................................ 2, 10, 18

Rule 12(b)(2) ....................................................................................................... 1, 7, 10, 18

Rule 12(b)(6) ......................................................................................................... 2, 12, 18

## INTRODUCTION

Plaintiffs Mario Del Valle ("Del Valle"), Enrique Falla ("Falla") and Angelo Pou ("Pou" and, together with Del Valle and Falla, "Plaintiffs") claim that, in 1959, the Cuban government confiscated a *finca*, which Plaintiffs refer to as the "Muniz Property." Plaintiffs further allege that, in the early 1960's, the Cuban government confiscated two beachfront homes in Varadero, Cuba, which Plaintiffs refer to as the "Del Valle Property" and the "Falla Property" (together with the Muniz Property, the "Properties"). According to Plaintiffs, the Cuban government demolished the homes on the Del Valle Property and the Falla Property, along with several other nearby homes, and together with Blue Diamond Hotels & Resorts, Inc. ("Blue Diamond"), built a hotel—the Starfish Cuatro Palmas (the "Cuatro Palmas"). Plaintiffs further allege that, after seizing the Muniz Property, the Cuban government, together with Blue Diamond, developed the Memories Jibacoa Resort (the "Memories Jibacoa" and, together with the Cuatro Palmas, the "Resorts"). Decades after the Cuban government allegedly confiscated the Properties, certain subsidiaries of Defendant Expedia, Inc. ("Expedia Group")[1] began to offer travelers the ability to secure reservations at the Resorts through web-based systems consistent with general and specific licenses issued by the United States government for offering travel-related services to Cuba.

Claiming to be "rightful owners of [a] claim to" the Del Valle Property, the Falla Property and the Muniz Property,  Del Valle, Falla and Pou, respectively, now sue Expedia Group, Hotels.com L.P., Hotels.com GP, LLC, and Orbitz, LLC (collectively, the "Expedia Entities"), along with Booking.com B.V. and Booking Holdings Inc. (collectively, the "Booking Entities"), in a putative class action for "trafficking" in confiscated property under Title III of the Cuban Liberty and Democratic Solidarity Act, 22 U.S.C. § 6021 *et. seq.* ("Helms-Burton Act" or "Act"). Plaintiffs seek damages from the Expedia Entities equal to three times the value of the Properties, plus attorneys' fees and costs. Plaintiffs' suit fails, however, and must be dismissed for three independent reasons:

First, the Expedia Entities are not subject to personal jurisdiction in Florida. The only allegations in the operative complaint related to the Expedia Entities' purported contacts with Florida are conclusory. Indeed, the only factual allegations that even attempt to connect the Expedia Entities to Florida are that (1) reservations at the Resorts are offered to Florida residents—like all other U.S. residents—through online booking providers like Expedia Group and (2) the Expedia Entities solicit and accept reservations from Florida residents—like all other U.S. residents. Those allegations cannot establish personal jurisdiction. Plaintiffs have therefore failed to meet their burden to plead a prima facie case for personal jurisdiction, and this case should be dismissed under Rule 12(b)(2).

---

[1] In March 2018, the Delaware corporation named as a defendant changed its name to Expedia Group, Inc.

4824-8338-6551

Second, even if the Expedia Entities were subject to personal jurisdiction in Florida, this Court lacks subject matter jurisdiction over this case because Plaintiffs lack standing to sue under Article III of the Constitution. Plaintiffs lack constitutional standing because they fail to clearly allege facts showing that they have suffered an injury-in-fact, much less one that is causally connected to the Expedia Entities' offering reservations at the Resorts. As a result, this case must be dismissed under Rule 12(b)(1).

Third, even absent these twin jurisdictional defects, Plaintiffs' complaint should be dismissed under Rule 12(b)(6) because it fails to state a claim upon which relief can be granted. Plaintiffs' complaint fails in the same two independent respects as the complaint in *Gonzalez v. Amazon.com, Inc.*, No. 1:19-cv-23988-RNS, 2020 WL 1169125 (S.D. Fla. Mar. 11, 2020): Plaintiffs have not sufficiently alleged that they own an actionable ownership interest in the Properties, or that the Expedia Entities knowingly and intentionally engaged in activity related to confiscated property when they offered reservations at the Resorts, *see id.* at *2. But that is not all. Plaintiffs' claims are also barred by two of the Act's definitional exemptions: the lawful-travel clause in the Act's definition of *traffics*, and the residential-use provision in the Act's definition of *property*.

## BACKGROUND

### A. The Helms-Burton Act

Congress passed the Helms-Burton Act in 1996. Title III of the Act—subject to certain limitations and definitions—grants U.S. nationals who "own[ ] the claim" to "property" confiscated by the Cuban government the right to sue and recover damages from any person who "traffics" in that property. 22 U.S.C. § 6082(a). The Act's definition of *traffics* covers an expansive range of conduct that includes not only transferring or holding an interest in confiscated property, but also "engag[ing] in a commercial activity using or otherwise benefiting from confiscated property" and "caus[ing], direct[ing], participat[ing] in, or profit[ing] from" conduct that otherwise constitutes trafficking. *Id.* § 6023(13)(A).

However, such conduct constitutes trafficking only if done "knowingly and intentionally." *Id.* Indeed, the scienter requirement is just one of many limitations that Congress included in the Act to limit its expansive scope and unprecedented extraterritorial application. Those limitations include:

- Limiting actions based on property confiscated before the Act's enactment date, March 12, 1996, to U.S. nationals who already owned a claim to that property as of that date. *Id.* § 6082(a)(4)(B).
- Excluding, with limited exceptions, real property used for residential purposes from the Act's definition of *property*, and thereby barring Title III actions based on claims to such real property. *Id.* § 6023(12)(B).

2

- Excluding from the definition of *traffics* four categories of desirous conduct, including transactions and uses of property incident and necessary to lawful travel to Cuba. *Id.* § 6023(13)(B).

In addition to these and other specific limitations, the Act also empowers the President to suspend the right of action in Title III for successive six-month periods. *Id.* § 6085(c). Immediately after the Act became effective on March 12, 1996, President Clinton suspended Title III's right of action and renewed the suspension during the remainder of his presidency. Presidents Bush and Obama did the same, as did President Trump for a time. But in 2019—more than twenty years after the Act's passage—the suspension of Title III was permitted to expire.

### B. Procedural History

On June 24, 2019, Del Valle and Falla, along with nine other named plaintiffs, filed this case as a putative class action against multiple defendants, including Booking.com B.V. (*See* Class Action Compl., ECF No. 1.) A week later, Del Valle and Falla, along with Mario Echeverria, filed a corrected complaint. (*See* Corr. Compl., ECF No. 5.) Eight of the original plaintiffs did not join that corrected complaint. (*See id.*) None of the Expedia Entities were named as Defendants in the original complaint or the corrected complaint. (*See* Class Action Compl.; Corr. Compl.) On January 17, 2020—more than six months after Del Valle and Falla filed their corrected complaint—they filed an amended complaint, in which they dropped five of the previously named defendants and added the Expedia Entities and Booking Holdings Inc. as defendants for the first time. (*See* Am. Compl., ECF No. 15). That amended complaint no longer included Echevarria as a named plaintiff but added a new plaintiff, Pou, and identified the Muniz Property for the first time. (*See id.*).

### C. Plaintiffs' Current Allegations

In the current complaint, Plaintiffs allege that Del Valle, Falla, and Pou respectively, is each "one of the current heirs" to the Del Valle Parcel, the Falla Parcel, and the Muniz Property (*id.* at 2 nn. 1–3; *see id.* ¶ 22) and "rightful owners of the claim to" the Del Valle Property, the Falla Property and the Muniz Property (*id.* ¶¶ 28–30). Specifically, Plaintiffs allege as follows:

With respect to the Del Valle Property, Plaintiffs allege that Luis Del Valle Esnard "owned several parcels of beachfront property" in Varadero bordered on the west by Calle 62, on the east by Calle 64, on the south by a vacant lot running along Avenida Primera, and on the north by the ocean. (*Id.* ¶ 15.) On the passing of Luis Del Valle Esnard, "his property was distributed pursuant to a will to his children, including his son Mario Del Valle Sr." (*Id.* ¶ 16.) A beach-front parcel, which Plaintiffs term the "Del Valle Parcel," was passed down to Mario Del Valle Sr., and later to Del Valle Sr.'s "descendants." (*Id.* at 2.) In the late 1950s, Mario Del Valle Sr. built a "beach home" on that property "for his family." (*Id.* ¶ 17.) Plaintiffs refer to that property as the "Del Valle Property" (*id.*) without explaining the difference between the Del Valle *Parcel* and the Del Valle *Property*. Plaintiffs

declare Del Valle the "Del Valle Heir" and claim that he is "one of the current heirs to the Del Valle Parcel." (*Id.* at 2 n.1.) Plaintiffs further allege that, since its confiscation, and as of the time of filing this lawsuit, the Del Valle Family, and subsequently the Del Valle Heir, have been rightful owners of the claim to the Del Valle Property. (*Id.* ¶ 28.)

Although Plaintiffs allege that the Del Valle Parcel was passed down to Mario Del Valle Sr. "and later to Del Valle Sr.'s descendants," the complaint includes no factual allegations regarding inheritance of the Del Valle *Property* (as opposed to the Del Valle *Parcel*) nor does it include any factual allegations regarding Del Valle's relationship to Mario Del Valle Sr., how or when Del Valle became a "rightful owner" of a claim to the Del Valle Property, the nature or extent of that claim, or when or how Del Valle allegedly became "one of the current heirs" to the Del Valle Property. In addition, Plaintiffs do not allege that Del Valle is a part of the "Del Valle Family"—an undefined term—or a "descendant[]" of Mario Del Valle Sr. Finally, Plaintiffs do not allege when Del Valle became a United States citizen or whether Mario Del Valle Sr. was a United States citizen.

With respect to the Falla Property, Plaintiffs allege that Laureano Falla, together with his father-in-law, Eugenio Crabb, owned the parcel of land next to Luis Del Valle Esnard, which Plaintiffs initially term the "Falla Parcel." (*Id.* at 2.) Plaintiffs allege that Falla Sr. and Crabb, like Luis Del Valle Esnard, "built a home for his family" on that parcel. *Id.* Plaintiffs refer to that property as the "Falla Property" (*id.* ¶ 18), without explaining the difference (if any) between the Falla *Parcel* and the Falla *Property*. Like with Del Valle, Plaintiffs declare Falla the "Falla Heir" and claim that he is "one of the current heirs to the Falla Parcel." (*Id.* at 2 n.2.) Plaintiffs further allege that, since its confiscation, and as of the time of filing this lawsuit, the Falla Family, and subsequently the Falla Heir, have been rightful owners of the claim to the Falla Property. (*Id.* ¶ 29.)

Similar to their allegations regarding Del Valle, although Plaintiffs allege that Falla's "descendants" "enjoy[ed]" the beach home on the Falla Parcel (*id.* at 2), the complaint includes no allegations regarding inheritance of the Falla Parcel or the Falla Property, nor does it include any allegations regarding Falla's relationship to Laureano Falla Sr., how or when Falla became a "rightful owner" of a claim to the Falla Property, the nature or extent of that claim, or when or how Falla allegedly became "one of the current heirs" to the Falla Property. In addition, Plaintiffs do not explain whether Falla is a part of the "Falla Family"—an undefined term—or a "descendant[]" of Laureano Falla Sr. Finally, Plaintiffs do not allege when Falla became a United States citizen or whether Laureano Falla was a United States citizen.

With respect to the Muniz Property, Plaintiffs allege that, in 1910, Marcelino Muniz and an unnamed business partner purchased a *finca*, consisting of over two thousand acres of land in Canasi, Matanzas, Provice, Cuba, bordered on the north by Arroyo Bermejo Beach, which they named "La Matilde." (*Id.* ¶¶ 22–23.) Plaintiffs refer to that property as the "Muniz Property." (*Id.* ¶ 22.) Plaintiffs allege that, on the passing of Marcelino Muniz y Rodriguez in 1957, his property was dis-

tributed to his only daughter Carmen Muniz and, upon her passing, the property was inherited by her three children, including Pou. (*Id.* ¶ 24.) Like with Del Valle and Falla, Plaintiffs declare Pou the "Muniz Heir" and claim that he is "one of the current heirs to La Matilde." (*id.* at 2 n.3.) Plaintiffs further allege that, since its confiscation, and as of the time of filing this lawsuit, the Muniz Family, and subsequently the Muniz Heir, have been rightful owners of the claim to the Muniz Property. (*Id.* ¶ 30.) Although the complaint alleges that Pou, and his two siblings, inherited the Muniz Property from their mother (*id.* ¶ 24), it does not state when their mother died or identify the nature and extent of Pou's purported claim. In addition, Plaintiffs do not allege when Pou became a United States citizen or whether his mother was a United States citizen.

Plaintiffs allege that the Cuban government confiscated the Muniz Property in 1959 and the Del Valle and Falla Properties in the early 1960s. (*Id.* ¶¶ 19, 25.) According to Plaintiffs, in the decades following the alleged confiscation of the Properties, the Cuban government, together with Blue Diamond, developed the Resorts. (*Id.* ¶¶ 20, 26.) Plaintiffs allege that the Cuban government demolished the homes on the Del Valle Property and the Falla Property, along with several other nearby homes, and then in 1991, together with Blue Diamond, built the Cuatro Palmas. (*Id.* ¶ 20.) As for the Muniz Property, Plaintiffs allege that throughout the decades following its confiscation, the Cuban government, together with Blue Diamond, developed the Memories Jibacoa. (*Id.* ¶ 26.) Plaintiffs fail to allege that either of the Resorts are actually located on the Properties.

In addition to bringing individual claims, Plaintiffs purport to bring a class action on behalf of "U.S. nationals…who own property…in Cuba that was expropriated by the government of Cuba prior to March 12, 1996, and has been trafficked by an agency or instrumentality of Cuba together with Blue Diamond, in many cases with the assistance of the Expedia Entities and the Booking Entities…." (*Id.* ¶ 46.)

### D. The Expedia Entities

Expedia Group is a Delaware corporation with its principal place of business in Washington. (*Id.* ¶ 5.) Plaintiffs allege that the other Expedia Entities are affiliates of Expedia Group. (*Id.* ¶¶ 6–8.) As Plaintiffs allege, none of the Expedia Entities is organized or has its principal place of business in Florida. (*Id.*) Plaintiffs describe Expedia Group as the corporate parent company for a number of brands that, together, maintain numerous "travel booking sites" that "offer[] more than 1 million properties for rent." (*Id.* ¶ 34.)

Plaintiffs allege that "the Expedia and Booking Entities…solicit and accept reservations from U.S. residents, including Florida residents," and that "vacation packages at [the Resorts] could be reserved directly from the Expedia and Booking.com Entities." (*Id.* ¶¶ 21, 27.) Plaintiffs assert that the Expedia Entities "have used or benefitted from the confiscated properties" and therefore

"traffick[ed]" in the Properties under Title III, by "offering, for economic benefit, reservations at the [Resorts]." (*Id.* ¶ 71.)

## ARGUMENT & AUTHORITIES

### A. Lack of Personal Jurisdiction

Determining whether non-resident defendants, such as the Expedia Entities, are subject to personal jurisdiction is a threshold issue that a court must decide before any other matter. *Madara v. Hall*, 916 F.2d 1510, 1513–14 (11th Cir. 1990) ("The court should have addressed the personal jurisdiction question first."). The analysis has two parts. *Id.* First, the Court determines whether Florida's long-arm statute provides a basis for personal jurisdiction. *Slaihem v. Sea Tow Bahamas Ltd.*, 148 F. Supp. 2d 1343, 1349 (S.D. Fla. 2001) (citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996)). Second, if the long-arm statute is satisfied, then the Court determines whether the exercise of personal jurisdiction comports with due process. *Id.* "Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant." *Madara*, 916 F.2d at 1514.

The Supreme Court has recognized two types of personal jurisdiction: specific and general. General personal jurisdiction—or "all purpose" jurisdiction—"permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit." *Walden v. Fiore*, 571 U.S. 277, 284 n.6 (2014). Specific personal jurisdiction—or "case-linked" jurisdiction—"depends on an affiliation between the forum and the underlying controversy (i.e., an activity or occurrence that takes place in the forum State and is therefore subject to the State's regulation)." *Id.* (internal quotation marks and alterations omitted); *accord Madara*, 916 F.2d at 1516 n.7 ("Specific personal jurisdiction is founded on a party's contacts with the forum state that are related to the cause of action.").

Plaintiffs bear the burden of "alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.". *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). Conclusory allegations are insufficient to make out a prima facie case of personal jurisdiction. *In re Takata Airbag Products Liab. Litig.*, 396 F. Supp. 3d 1101, 1142 (S.D. Fla. 2019) ("[C]ourts in the Eleventh Circuit have repeatedly declined to exercise specific jurisdiction over a nonresident defendant on the basis of generalized and conclusory allegations…." (citing *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006))). If the complaint lacks "properly pleaded facts" establishing a prima facie case, "a defendant wishing to properly challenge such a legally insufficient assertion of jurisdiction need not do anything more than file a simple (unsupported) motion" without affidavits or other materials. *Borislow v. Canaccord Genuity Group Inc.*, No. 9:14-cv-80134-KLR, 2014 WL 12580259, at *5 (S.D. Fla. June 27, 2014) (internal quotations omitted).

Here, Plaintiffs have failed to plead sufficient facts to make out a prima facie case of personal jurisdiction because they make only conclusory allegations about jurisdiction. They allege that the

Expedia Entities "maintain and carry on continuous and systematic contacts with Florida, regularly transact business within Florida, regularly avail themselves of the benefits of their presence in Florida, and caused injury within Florida by committing acts outside of Florida while engaging in solicitation within Florida." (Am. Compl. ¶ 12.) Despite these broad conclusory allegations, the only **facts** that Plaintiffs allege about Florida are that (i) they—the plaintiffs—live there, (ii) the Expedia Entities solicit and accept reservations from U.S. residents, including Florida residents, and (iii) reservations at the Resorts are offered to U.S. residents, including Florida residents, through online booking providers like Expedia Group. (*Id.* at 3, ¶¶ 2–4, 21, 27.) These allegations fail to establish a prima facie case of either general or specific jurisdiction, and Plaintiffs' complaint should be dismissed under Rule 12(b)(2).

### 1.  Plaintiffs fail to allege a prima facie case of general jurisdiction.

Plaintiffs do not even cite the general-jurisdiction provision of Florida's long-arm statute—which applies to defendants who engage in "substantial and not isolated activity" within Florida, FLA. STAT. § 48.193(2)—much less allege facts satisfying that provision. *See Fast SRL v. Direct Connection Travel LLC*, No. 1:17-cv-20900, 2018 WL 7822711, at *3 (S.D. Fla. Aug. 3, 2018) (identifying § 48.193(2) as the long-arm statute's general-jurisdiction provision). Rather, Plaintiffs rely only on provisions of the long-arm statute dealing with specific jurisdiction. (Am. Compl. ¶ 12 (citing FLA. STAT. §§ 48.193(1)(a)(1), (1)(a)(6)); *see Fast SRL*, 2018 WL 7822711, at *3. For that reason alone, Plaintiffs fail to make a prima facie case of general jurisdiction.

Plaintiffs' allegations also cannot satisfy the due process requirements for general jurisdiction. A court may exercise general jurisdiction over a corporation only when the corporation's "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotations omitted). Thus, "only a limited set of affiliations with a forum will render a defendant amenable to [general] jurisdiction there." *Id.* at 137. For a corporation, the "paradigm all-purpose forums" for general jurisdiction are the corporation's "place of incorporation and principal place of business." *Id.* It is only "in an exceptional case" that "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139 n.19. To satisfy that narrow exception, a defendant's activities in the forum state must "closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1205 (11th Cir. 2015). The same standard for general jurisdiction applies to non-corporate entities. *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 332 (2d Cir. 2016) (describing the *Daimler* test as applicable to "entities"); *McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336, 1344 (S.D. Fla. 2017) (applying the *Daimler* standard to a limited liability company).

7

Neither of the "paradigm all-purpose forums" support general jurisdiction in Florida because, as Plaintiffs allege, Expedia Group is a Delaware corporation with its principal place of business in Washington (Am. Compl. ¶ 5), Hotels.com LP is a Texas limited partnership with headquarters in Texas (*id.* ¶ 6), Hotels.com GP, LLC is a Texas limited liability company with headquarters in Washington (*id.* ¶ 7), and Orbitz, LLC is a Delaware limited liability company with its headquarters in Illinois (*id.* ¶ 8). And Plaintiffs fail to allege any facts establishing that the Expedia Entities carry on operations in Florida that so closely approximate their place of incorporation or principal place of business as to render them "at home" in Florida. The only factual allegations purporting to connect the Expedia Entities' operations to Florida is that the Expedia Entities offer, solicit and accept reservations from Florida residents (like all other U.S. residents). But both the Supreme Court and the Eleventh Circuit have held that in-state business, standing alone, is insufficient to establish personal jurisdiction. *See Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1314 (11th Cir. 2018) (explaining that "even substantial, continuous, and systematic business is insufficient to make a company at home in the state" (internal quotation marks omitted)), *cert. denied sub nom. Waite v. Union Carbide Corp.*, 139 S. Ct. 1384 (2019); *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017) (explaining that "in-state business…does not suffice to permit the assertion of general jurisdiction over claims…that are unrelated to any activity occurring in [that state]").

### 2.  Plaintiffs fail to allege a prima facie case of specific jurisdiction.

Plaintiffs' allegations also cannot make out a prima facie case of specific jurisdiction under either Florida's long-arm statute or the Due Process Clause.

#### a.  Plaintiffs' allegations fail to satisfy the long-arm statute.

"Florida's long-arm statute is to be strictly construed." *Serra-Cruz v. Carnival Corp.*, 400 F. Supp. 3d 1354, 1358 (S.D. Fla. 2019). Plaintiffs rely on two specific-jurisdiction provisions in Florida's long-arm statute—§ 48.193(1)(a)(1) and § 48.193(1)(a)(6)—that provide for personal jurisdiction over a nonresident corporation "for any cause of action arising from" (1) "[o]perating, conducting, engaging in, or carrying on a business…in [Florida] or having an office or agency in [Florida]" and (6) "[c]ausing injury to persons or property within [Florida] arising out of an act or omission by the defendant outside [Florida], if, at or about the time of the injury…defendant was engaged in solicitation or service activities within [Florida]." FLA. STAT. §§ 48.193(1)(a)(1), (1)(a)(6). Plaintiffs have not alleged facts creating jurisdiction under either of those provisions.

**First**, the Expedia Entities' alleged conduct does not fit within either of the long-arm provisions Plaintiffs cite. For starters, Plaintiffs do not allege any facts showing that the Expedia Entities are "operating, conducting, engaging in, or carrying on a business" in Florida. FLA. STAT. § 48.193(1)(a)(1). The only connections between the Expedia Entities and Florida alleged in the amended complaint are that the Resorts are offered to visitors, including Florida and U.S. residents,

through online booking providers like Expedia Group (Am. Compl. 3), and the "[t]he Expedia Entities…solicit and accept reservations from U.S. residents, including Florida residents" (*id.* ¶¶ 21, 27). But this is not enough because "it is well settled that…maintaining a website accessible in Florida…is insufficient to satisfy Section 48.193(1)(a)(1)." *Storms v. Haugland Energy Grp., LLC*, No. 9:18-cv-80334, 2018 WL 4347603, at *8 (S.D. Fla. Aug. 17, 2018) (internal quotation marks omitted), *report and recommendation adopted*, No. 9:18-cv-80334-BB, 2018 WL 4347604 (S.D. Fla. Sept. 4, 2018); *accord RG Golf Ware-house, Inc. v. Golf Warehouse, Inc.*, 362 F. Supp. 3d 1226, 1236 (M.D. Fla. 2019) ("[A]lthough Defendant operates an interactive website that is accessed daily by potential and actual Florida customers, the Court finds that only amounts to doing business as if in Florida, which is insufficient under the plain text of [Section 48.193(1)(a)(1)]." (internal quotation marks and alterations omitted)); *Lemoine v. Wong*, No. 0:17-cv-60099-UU, 2017 WL 5127592, at *4 (S.D. Fla. Mar. 29, 2017) ("[A] website accessible in Florida, standing alone, is insufficient to satisfy Section 48.193(1)(a)(1).").

Nor have Plaintiffs alleged conduct that fits within § 48.196(1)(a)(6). Personal jurisdiction under § 48.196(1)(a)(6) "applies only when a defendant's out of state actions cause personal injury or damage to physical property in the State of Florida." *Snow*, 450 F.3d at 1318. Plaintiffs do not allege any personal injury or damage to real property in Florida, so personal jurisdiction does not attach under § 48.196(1)(a)(6). *See id.*; *see also Prunty v. Arnold & Itkin LLP*, 753 F. App'x 731, 735-36 (11th Cir. 2018) ("[J]urisdiction is not proper under § 48.193(1)(a)(6) because [plaintiff] has alleged only economic injuries.").

**Second**, Plaintiffs' allegations fail to satisfy the long-arm statute because their cause of action does not "arise out of" the Expedia Entities' purportedly offering, soliciting, and accepting reservations from Florida residents. The long-arm provisions on which Plaintiffs rely apply only when the plaintiff's cause of action arises from the defendant's Florida contact. FLA. STAT. § 48.193(1)(a) ("A person…submits…herself…to the jurisdiction of the courts of this state for any cause of action **arising from** any of the following acts…" (emphasis added)). This requires "a nexus between the alleged causes of action" and the defendant's alleged conduct. *Fast SRL v. Direct Connection Travel LLC*, No. 1:17-cv-20900-JEM, 2018 WL 7822711, at *5 (S.D. Fla. Aug. 3, 2018). Plaintiffs base their Title III cause of action on the allegation that the Expedia Entities trafficked "by offering, for economic benefit, reservations at the [Resorts]." (Am. Compl. ¶ 71.) Assuming *arguendo* that merely offering reservations at the Resorts constitutes trafficking under Title III, the fact that residents of Florida (like residents of every other state) could make such reservations is hardly essential to Plaintiffs' cause of action. Indeed, the location of potential travelers does not affect the merits of Plaintiffs' cause of action at all and therefore cannot support specific jurisdiction under the Florida long-arm statute.

### b.  Plaintiffs' allegations fail to satisfy due process.

Plaintiffs also fail to show a prima facie case for specific jurisdiction under the Due Process Clause. For the exercise of specific jurisdiction to comport with due process, "the defendant's contacts with the forum must relate to the plaintiff's cause of action or have given rise to it." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 (11th Cir. 2009); *Madara*, 916 F.2d at 1516. A cause of action "arises out of or relates to" a defendant's activity in a state "only if the activity is a 'but-for' cause of the tort." *Waite*, 901 F.3d at 1314 (alterations omitted). As just explained, Plaintiffs' theory of liability rests merely on the fact that the Expedia Entities offered reservations for the Resorts. That Florida residents are among those that the Expedia Entities allegedly offer, solicit, and accept reservations from is not a but-for cause of Plaintiffs' cause of action; indeed, the residency of travelers has nothing to do with the Expedia Entities' alleged liability at all.

Because Plaintiffs have not alleged facts creating personal jurisdiction (whether general or specific) under either the Florida long-arm statute or the Due Process Clause, the Court should dismiss this case for lack of personal jurisdiction under Rule 12(b)(2). *See Borislow*, 2014 WL 12580259, at *5.

## B.  Lack of Subject Matter Jurisdiction – No Standing

The Court should also dismiss this case under Rule 12(b)(1) because Plaintiffs lack standing under Article III of the United States Constitution ("Article III"). *Region 8 Forest Service Timber Purchasers Council v. Alcock*, 993 F.2d 800, 807 n.8 (11th Cir. 1993) ("Because a motion to dismiss for lack of standing is one attacking the district court's subject matter jurisdiction, it is brought pursuant to Rule 12(b)(1)."). "Standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005) (quotations and alterations omitted). Because Article III standing is a constitutional limitation on the jurisdiction of federal courts, "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016).

The plaintiff bears the burden of meeting the "irreducible constitutional minimum" of standing under Article III by establishing three elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992). First, the plaintiff must establish that he suffered an "injury in fact." *Id.* Second, "there must be a causal connection between the injury and the conduct complained of." *Id.* Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotations omitted). The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *Spokeo*, 136 S. Ct. at 1547. At the pleadings stage, this requires the plaintiff to "clearly…allege facts demonstrating each element." *Id.* (internal quotation marks omitted). Conclusory allegations are insufficient. *R.W. v. Georgia Dept. of Educ.*, 353

F. App'x 422, 423 (11th Cir. 2009) (affirming dismissal when the plaintiff's standing allegations "were wholly conclusory and supported by no facts"); *Access for the Disabled v. First Subway, LLC.*, No. 10-61131-CIV, 2010 WL 11596384, at *2 (S.D. Fla. Oct. 4, 2010) (explaining that the plaintiff's "conclusory allegation" of injury was "insufficient to establish the required element of injury-in-fact that is needed to demonstrate standing"). "If the plaintiff fails to meet its burden, [the] court lacks the power to create jurisdiction by embellishing a deficient allegation…." *Bochese*, 405 F.3d at 976.

Plaintiffs fail to allege facts demonstrating the first or second elements of standing. As to the first, injury-in-fact, a plaintiff must allege facts showing "an invasion of a legally protected interest that is sufficiently concrete and particularized rather than abstract and indefinite." *Kawa Orthodontics, LLP v. Sec'y, U.S. Dept. of the Treasury*, 773 F.3d 243, 246 (11th Cir. 2014). Here, the Plaintiffs' claims stem from the Cuban government's alleged confiscation of the Properties. (Am. Compl. ¶ 70.) Although that confiscation may constitute a concrete and particularized injury to individuals from whom the property was confiscated, Plaintiffs fail to plead facts demonstrating that they own any right to that property. Plaintiffs assert that they are "rightful owners of [a] claim to" the Properties. (*Id.* ¶¶ 28-30.) But that is a conclusion, not a factual allegation. Plaintiffs do not allege any facts showing that they own any right to the Properties today, much less when they were confiscated. Indeed, Plaintiffs do not even allege that Del Valle or Falla are "descendants" of the alleged owners of the Properties. Instead, the complaint gives them a different moniker—the "Del Valle Heir" and the "Falla Heir—and states that they are "one of the current heirs to" the Del Valle Parcel and the Falla Parcel. (*Id.* at 2 nn. 1-2.) That too is a conclusion, and an ambiguous one because the complaint offers no explanation of what it means to be an "heir" to the Del Valle Parcel or the Falla Parcel. Plaintiffs' conclusory allegations fail to meet a plaintiff's burden to clearly allege facts demonstrating an injury in fact.

Even if confiscation of the Properties could constitute a concrete injury to Plaintiffs, Plaintiffs also fail to satisfy the second, causation element of constitutional standing. To satisfy that element, a plaintiff must allege facts demonstrating a "nexus" or "causal connection" between the plaintiff's injury and the defendant's conduct. *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Florida*, 641 F.3d 1259, 1265 (11th Cir. 2011); *Wehunt v. Ledbetter*, 875 F.2d 1558, 1566–67 (11th Cir. 1989). That is, the plaintiff must show that "[his] alleged injury is 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Kawa Orthodontics*, 773 F.3d at 247 (quoting *Lujan*, 504 U.S. at 560). Thus, a plaintiff lacks standing when an "independent source" caused the plaintiff to suffer injury. *See, e.g., Swann v. Sec'y, Georgia*, 668 F.3d 1285, 1288 (11th Cir. 2012).

Here, Plaintiffs fails to allege any "causal connection" between the Expedia Entities' challenged conduct and a concrete injury. To the extent that Plaintiffs allege any injury, it is that the Plaintiffs' families "had their property confiscated by the communist Cuban government." (Am.

Compl. ¶ 70.) But Plaintiffs fail to allege a "causal connection" between the Expedia Entities' challenged conduct—i.e., "offering, for economic benefit, reservations at the [Resorts]" (*id.* ¶ 71)—and that alleged injury. In other words, the Expedia Entities "played no role" in bringing about Plaintiffs' alleged injury. *Kawa*, 773 F.3d at 247. That alleged injury occurred at least fifty years **before** the Expedia Entities' alleged conduct (and almost forty years before Expedia Group came into existence) and was caused by the Cuban government. After all, Plaintiffs do not offer any allegations suggesting that the Properties would not remain confiscated or that they would otherwise be in a different position if the Expedia Entities had not "offer[ed], for economic benefit, reservations at the [Resorts]." Because Plaintiffs' claimed injury was "directly caused by a third party who is not a party to the lawsuit," *Wehunt*, 875 F.2d at 1567, and would have occurred "regardless of" the Expedia Entities' challenged conduct, *Swann*, 668 F.3d at 1289, Plaintiffs lack standing to bring this action against the Expedia Entities.

## C.  Failure to State a Claim

Pursuant to this Court's decision in *Gonzalez*, Plaintiffs' complaint should be dismissed for failure to state a claim. Under Rule 12(b)(6), a complaint should be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, meaning that a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678. And while the Court must accept a plaintiff's well-pleaded facts as true, it need not accept "conclusory allegations, unwarranted deductions of fact[]," *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002), or "legal conclusion[s] couched as…factual allegation[s]," *Twombly*, 550 U.S. at 555 (quotation omitted).

Here, Plaintiffs fail to state a Title III claim that is plausible on its face because they fail to plead facts showing that (1) they own an actionable claim to the Properties and (2) the Expedia Entities trafficked in the Properties. As in *Gonzalez*, Plaintiffs have not sufficiently alleged that they have an actionable ownership interest in the respective Properties or that the Expedia Entities knowingly and intentionally trafficked in the Properties. 2020 WL 1169125 (S.D. Fla.), at *2. The complaint should also be dismissed for two additional reasons not presented in *Gonzalez*.

### 1.  Plaintiffs fail to plead an actionable ownership interest under Title III.

To have a cause of action under Title III, one must own a claim to property confiscated by the Cuban government. 22 U.S.C. § 6082(a)(1)(A). Further, where, as here, the property in question

was allegedly confiscated before March 12, 1996 (the Act's enactment date), Congress limited the Title III cause of action to U.S. nationals who already owned their claim to the property as of the enactment date. *Id.* § 6082(a)(4)(B). Here, Plaintiffs fail to adequate allege that either requirement is met.

**First**, Plaintiffs fail to adequately allege that they own claims to the respective Properties. Although Plaintiffs describe themselves as "one of the current heirs" to the Del Valle Parcel, the Falla Parcel, and the Muniz Parcel (Am. Compl. 2 nn.1–3), and baldly assert that they are "rightful owners of the claim to" the Del Valle Property, the Falla Property, and the Muniz Property (*id.* ¶¶ 28–30), these are mere conclusory allegations. *See Iqbal*, 556 U.S. at 678; *Oxford Asset Mgmt.*, 297 F.3d at 1188. Plaintiffs' complaint contains no **factual** allegations from which one could draw a reasonable inference that Plaintiffs own a claim to any of the Properties. *See Black Diamond Land Mgmt. LLC v. Twin Pines Coal Inc.*, 707 F. App'x 576, 580 (11th Cir. 2017) (holding that the plaintiff failed to adequately allege that it owned certain timber and mineral rights because, beyond a conclusion of ownership, "the Complaint contains no factual support for the allegation that the resources at issue are actually owned by Plaintiff"); *see also U.S. v. $304,050.00 in U.S. Currency*, No. 2:12-cv-138-FTM-29, 2012 WL 4953126, at *2 (M.D. Fla. Oct. 17, 2012) ("Claimant's assertion that he is 'the True and Rightful owner of' the property is a conclusory allegation and is not entitled to the presumption of truthfulness.").

**Second**, even if Plaintiffs had alleged facts demonstrating that they own claims to the respective Properties, Plaintiffs' complaint still fails to state a cause of action under Title III because it does not allege that a United States citizen owned the claims to the Properties on March 12, 1996. *See Gonzalez v. Amazon.com, Inc.*, No. 1:19-cv-22619-RNS, 2020 WL 1169125, at *2 (S.D. Fla. Jan. 17, 2020). Under Title III, "[i]n the case of property confiscated before March 12, 1996, a United States national may not bring an action…on a claim to the confiscated property unless such national acquires ownership of the claim before March 12, 1996." 22 U.S.C. § 6082(a)(4)(B). Thus, for property allegedly confiscated before March 12, 1996, "a United States citizen must already own the claim to the confiscated property on March 12, 1996 when the Act was passed." *Gonzalez*, 2020 WL 1169125, at *2.

Here, because Plaintiffs allege that the Cuban government confiscated the Properties well before the Act's March 12, 1996 enactment date (Am. Compl. ¶¶ 19, 25), they must also allege facts demonstrating ownership in compliance with § 6082(a)(4)(B). *Id.* Plaintiffs fail to do so. Just like the plaintiff in *Gonzalez*, Plaintiffs do not allege when they allegedly inherited their claims, when they became United States citizens, whether their relatives from whom they inherited their claims were United States citizens and, if so, when those relatives became citizens. *Id.* And, as in *Gonzalez*, without these allegations, Plaintiffs fail to allege that they have an actionable ownership interest in the Properties. *Id.*

13

## 2. Plaintiffs fail to adequately plead trafficking.

Plaintiffs fall equally short in pleading trafficking. The Act's definition of *traffics* has two parts. Subparagraph (A) describes three types of activities related to confiscated property that, if done knowingly and intentionally, constitute trafficking. 22 U.S.C. § 6023(13)(A). Subparagraph (B) then lists four categories of conduct that **do not** constitute trafficking. *Id.* § 6023(13)(B). Among the conduct that specifically does not constitute trafficking is "transactions and uses of property incident to lawful travel to Cuba, to the extent that such transactions and uses of property are necessary to the conduct of such travel." *Id.* § 6023(13)(B)(iii) (hereinafter the "Lawful Travel Clause"). Plaintiffs' allegations fail under both parts of the definition.

### a. Plaintiffs fail to adequately allege that the Expedia Entities acted knowingly and intentionally.

To plead trafficking, Plaintiffs must allege facts giving rise to a reasonable inference that the Expedia Entities "knowingly and intentionally" engaged in one of the three categories of conduct related to confiscated property described in subparagraph (A) of the Act's definition. *See* 22 U.S.C. § 6023(13)(A); *Gonzalez*, 2020 WL 1169125 (S.D.Fla.), at *2; *see also Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) ("*Iqbal* itself directly held that malice and other degrees of intent are subject to the plausibility pleading standard."). Plaintiffs' theory appears to be that the Expedia Entities "engage[d] in a commercial activity…benefiting from confiscated property," 22 U.S.C. § 6023(13)(A)(ii), by "offering, for economic benefit, reservations at the [Resorts]" (Am. Compl. ¶ 71). Yet, like the plaintiff in *Gonzalez*, Plaintiffs do not allege that the Expedia Entities "knew the property was confiscated by the Cuban government nor that it was owned by a United States citizen." *Gonzalez*, 2020 WL 1169125, at *2. Indeed, Plaintiffs fail to include even conclusory allegations that the Expedia Entities satisfy Title III's scienter requirement; the complaint does not even include the words *knowingly* or *intentionally*. Under this Court's precedent, then, Plaintiffs' claims should be dismissed.

### b. The Lawful Travel Clause bars Plaintiffs' claims.

Under the Lawful Travel Clause, trafficking excludes "transactions and uses of property incident to lawful travel to Cuba, to the extent that such transactions and uses of property are necessary to the conduct of such travel." 22 U.S.C. § 6023(13)(B)(iii). Because the Lawful Travel Clause is part of the definition of *traffics*, and trafficking is an essential element of a Title III claim, Plaintiffs must plead facts showing that the Expedia Entities' actions fall outside the Lawful Travel Clause. *See, e.g., Benjamin v. CitiMortgage, Inc.*, No. 0:12-cv-62291-FAM, 2013 WL 1891284, at *3 (S.D. Fla. May 6, 2013) (dismissing FDCPA claim where plaintiff failed to allege that defendant bank did not fall within exception to definition of "debt collector"); *Monroe v. CitiMortgage, Inc.*, No. 8:07-cv-0066-

14

SCB-TGW, 2007 WL 1560194 at *2 (M.D. Fla. May 29, 2007) (same). Plaintiffs have not even attempted to do so. For that reason alone, they fail to adequately allege trafficking.

To be sure, two judges in this district declined to dismiss claims against a cruise ship company based on the plaintiffs' failure to allege conduct outside the Lawful Travel Clause, concluding that the clause is an affirmative defense as to which the defendant bears the burden of proof. *See Garcia-Bengochea v. Carnival Corp.*, No. 1:19-cv-21725, 2019 WL 4015576, at *3–4 (S.D. Fla. Aug. 26, 2019) (King, J.); *Havana Docks Corp. v. Carnival Corp.*, No. 1:19-cv-21724-BB, slip op. at 7–8 (S.D. Fla. Aug. 28, 2019), ECF No. 47 (Bloom, J.). As explained below, the Expedia Entities respectfully disagree with those rulings and their underlying analyses, which this Court is not bound by and should not follow. *See Gables Ins. Recovery v. United Healthcare Ins. Co.*, 39 F. Supp. 3d 1377, 1383, n.5 (S.D. Fla. 2013) (citing *Camreta v. Greene*, 131 S. Ct. 2020, 2033 n. 7 (2011)).

Nor does this Court's decision in *Gonzalez* suggest that the Lawful Travel Clause is an affirmative defense. In *Gonzalez*, a defendant argued that it could not be liable for trafficking under Title III because 31 C.F.R. § 515.582 permitted its conduct. The Court concluded that the plaintiff "need not refute every basis on which the Court could ultimately decide that the Defendants' conduct was lawful" but, instead, it was the defendant's burden to "establish that its conduct constituted lawful licensed activity and is thus exempt from liability under the Helms-Burton Act." *Gonzalez*, 2020 WL 1169125, at *3. Here, by contrast, the Expedia Entities are not arguing that a regulation or statute "negates [their] liability." *Id.* Instead, the Expedia Entities are arguing that, under Title III's definition, their alleged conduct cannot constitute trafficking. The statutory construction of the Helms-Burton Act makes clear that Congress intended the Lawful Travel Clause to be an element of the civil remedy—not an affirmative defense.

"The touchstone for determining the burden of proof under a statutory cause of action is the statute itself." *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, & Stevens, P.A.*, 525 F.3d 1107, 1110 (11th Cir. 2008) (citing *Schaffer v. Weast*, 546 U.S. 49, 56 (2005)). "When a statute is silent as to who bears the burden of proof, we resort to 'the ordinary default rule that plaintiffs bear the risk of failing to prove their claims.'" *Id.* (quoting *Schaffer*, 546 U.S. at 56). This default rule does not apply, however, to special exceptions to a statute's prohibitions or "general norms." *Id.* at 1112–13. Although "Congress is adept at drafting general norms that provide for exceptions, and frequently does so," *id.*, it did not do so with the Lawful Travel Clause.

Had Congress intended to place the burden of proof for the Lawful Travel Clause on defendants, it could have written it as an exception to Title III's liability-creating provision (*i.e.*, its "general norm"), § 6082(a)(1)(A), by putting it in that same section. Indeed, the statutory language shows that § 6082 is precisely where any such exceptions would appear. 22 U.S.C. § 6082(a)(1)(A) (beginning with, "Except as otherwise provided in **this section**…." (emphasis added)). But Congress included the Lawful Travel Clause in the Act's definition of *traffics*, which is not in Title III at

15

4824-8338-6551

all, much less in its liability-creating section. By doing so, Congress indicated its intent to make the Lawful Travel Clause part of the plaintiff's claim, not an affirmative defense. The Court should therefore dismiss Plaintiffs' claim for failing to even attempt to allege that the Expedia Entities' conduct falls outside the clause.

In any event, even if Congress had made the Lawful Travel Clause an affirmative defense, the clause still bars Plaintiffs' claim because it is apparent on the face of the complaint that defendants' alleged conduct fits squarely within the clause. *See Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984) ("[A] complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint."), *aff'd and reinstated on reh'g*, 764 F.2d 1400 (11th Cir. 1985) (en banc); *cf. Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations…show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim.").

To start, there can be no dispute that U.S. residents may lawfully travel to Cuba. *See* 31 C.F.R. § 515.560(a) (authorizing U.S. persons to travel to Cuba for a variety of reasons, including family visits, official government business, professional research, religious activities, and public performances, among others). Indeed, federal regulations authorize the Expedia Entities, by general license, to provide travel-related services to those U.S. persons lawfully traveling to Cuba. 31 C.F.R. § 515.572(a) ("Persons subject to U.S. jurisdiction are authorized to provide travel services in connection with travel-related transactions involving Cuba authorized pursuant to this part"); *see Empresa Cubana Exportadora de Alimentos y Productos Varios v. U.S. Dept. of Treasury*, 606 F. Supp. 2d 59, 64 (D.D.C. 2009) (the "general license" contained in the CACR, 31 C.F.R. 515, subpart E, "broadly authorizes entire classes of transactions").[2]

Nor can there be any question that offering hotel lodging in Cuba is both "incident to" and "necessary to the conduct of" such lawful travel. *Incident to* means simply "relating to." *Incident*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/incident (last visited Jan. 29, 2020); *see also Incident to Employment*, BLACK'S LAW DICTIONARY (11th ed. 2014) (defining incident to employment as "[a] risk that is related to or connected with a worker's job duties" (emphasis added)). The term *necessary* has consistently been construed broadly to mean "useful" or "convenient." *See, e.g., Fish v. Kobach*, 840 F.3d 710, 734 (10th Cir. 2016) ("[C]ourts also have frequently interpreted

---

[2] It comes as no surprise that Plaintiffs do not even attempt to allege that any reservations at the Resorts were secured through the Expedia Entities' websites were not incident to lawful travel. This is likely because, consistent with the terms and conditions of various OFAC general and specific licenses, the Expedia Entities obtain from all travelers—not just U.S. residents—making reservations for travel to Cuba on its platform a certification that such travel is made in accordance with one of the authorized purposes of travel under the CACR. As such, reservations made on, through, or with any platform operated or offered by the Expedia Entities for Cuba are incident to lawful travel.

'necessary' to mean something less than absolute necessity…."); *Nat. Resources Def. Council, Inc. v. Thomas*, 838 F.2d 1224, 1236 (D.C. Cir. 1988) (same); *see also McCulloch v. Maryland*, 17 U.S. 316, 413 (1819) (holding that "necessary" in the Necessary and Proper Clause does not require strict essentiality, but rather requires means that are "convenient, or useful, or essential" to the purpose in question).

Even if there was any doubt about the broad meaning of those terms, the Act's legislative history eliminates it. The congressional conference committee report—which, "next to the statute itself [] is the most persuasive evidence of congressional intent" and "deserve[s] great deference by courts," *RJR Nabisco, Inc. v. United States*, 955 F.2d 1457, 1462 (11th Cir. 1992)—paraphrased the clause as "remov[ing] any liability for…any activities **related to** lawful travel to Cuba." H.R. REP. NO. 104-468, at 44 (1996) (Conf. Rep.), *reprinted in* 1996 U.S.C.C.A.N. 558, 559, 1996 WL 97265 (emphasis added). Congress itself thus interpreted "incident to" and "necessary" as meaning nothing more than "related to."

Hotel lodging in Cuba is undeniably related to the conduct of lawful travel to Cuba. Indeed, lawful travel to Cuba would be largely impossible without it. Regardless of whether the Lawful Travel Clause is an element of a plaintiff's Title III cause of action or an affirmative defense, it bars Plaintiffs' claim here, and the amended complaint should be dismissed.

### 3. The Properties do not constitute "property" under the Act.

Finally, Title III grants a cause of action only to U.S. nationals who own a claim to confiscated "property." 22 U.S.C. § 6082(a)(1)(A). The Act's definition of *property* expressly does not include "property used for residential purposes unless, as of March 12, 1996," (i) the claim to the property is certified under the International Claims Settlement Act of 1949 or (ii) the property is occupied by a Cuban government or political-party official. 22 U.S.C. § 6023(12)(B). Plaintiffs fail to allege that the Del Valle Property or the Falla Property were used for anything other than "residential purposes" either at the time they were allegedly confiscated or when the Act was enacted. Indeed, Plaintiffs' description of both the Del Valle Property and the Falla Property as "beach **home[s]**" (Am. Compl. ¶¶ 17-18), allows no inference other than that they were used for residential purposes by Mario Del Valle Sr. and Luis Del Valle Esnard. And nothing in the amended complaint suggests that the homes were used for any other purpose before the Cuatro Palmas was developed. Therefore, the Del Valle "Property" and Falla "Property" are not "property" under the Act unless, as of March 12, 1996, they were the subject of a certified claim or were occupied by a Cuban official. 22 U.S.C. § 6023(12)(B). Plaintiffs fail to plead either circumstance—in fact, they specifically allege that the Properties are **not** the subject of a certified claim. (Am. Compl. ¶ 33.) Plaintiffs have therefore failed to plead that they own a claim to "property" under the Act.

17

## CONCLUSION

The Court should dismiss this case under Rule 12(b)(2) because Plaintiffs fail to allege facts making out a prima facie case for personal jurisdiction. Barring that, the Court should dismiss this case under Rule 12(b)(1) for lack of subject matter jurisdiction because Plaintiffs do not have constitutional standing. And even absent these twin jurisdictional defects, the Court should still dismiss this case under Rule 12(b)(6) because Plaintiffs' amended complaint fails to state a plausible claim under Title III.

## REQUEST FOR HEARING

The Expedia Entities respectfully submit that oral argument will be necessary to adequately argue the merits of the instant motion. Although this Court has issued binding precedent relating to the Helms-Burton Act, that precedent, and the limited non-binding case law construing the Helms-Burton Act, does not deal with personal jurisdiction or standing. The Expedia Entities estimate that one hour would be required for the oral argument.

Dated: March 23, 2020

Respectfully submitted,

SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, Texas 78701
(512) 495-6300 Telephone
(512) 495-6399 Facsimile

By:  _____
     David D. Shank (*admitted pro hac vice*)
     Texas Bar No. 24075056
     dshank@scottdoug.com

AKERMAN LLP
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, FL 33131
(305) 374-5600 Telephone
(305) 349-4656 Facsimile

     Augusto E. Maxwell
     Florida Bar No. 867845
     augusto.maxwell@akerman.com
     Lolita T. Sosa
     Florida Bar No. 121113
     lolita.sosa@akerman.com

*Attorneys for Defendants Expedia Group, Inc., Hotels.com L.P., Hotels.com GP, LLC, and Orbitz, LLC*