United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Mario Del Valle and others, <br> Plaintiffs, | ) <br> ) <br> ) | |
| v. | ) <br> ) | Civil Action No. 19-22619-Civ-Scola |
| Trivago GMBH and others, <br> Defendants. | ) <br> ) | |

**Order on the Motions to Dismiss**

Now before the Court are the Defendants' motions to dismiss. The Defendants Booking.com BV and Booking Holdings Inc. (the "Booking Defendants") filed a motion to dismiss (**ECF No. 52**), and the Defendants Expedia Group, Inc., Hotels.com L.P., Hotels.com GP, and Orbitz, LLC (the "Expedia Defendants") filed a separate motion to dismiss (**ECF No. 53**). For the reasons set forth below, the Defendants' motions are **granted**.

**1. Background**

The Plaintiffs Mario Del Valle, Enrique Falla, and Angelo Pou filed this action against the Defendants pursuant to Title III of the Cuban Liberty and Democratic Solidarity Act (the "Helms-Burton Act" or the "Act"). (ECF No 1.) The Act creates a private right of action against any person who "traffics" in confiscated Cuban property. *See* 22 U.S.C. § 6082(a)(1)(A). A purpose of the Helms-Burton Act is to "protect United States nationals against confiscatory takings and the wrongful trafficking in property confiscated by the Castro Regime." 22 U.S.C. § 6022(6).

Each of the Plaintiffs claim to be an heir to one of three beach-front properties in Cuba that were confiscated by the Cuban Government shortly after the revolution in 1959. (ECF No. 50 at 2.) After seizing the properties, the Cuban government demolished the beach houses on the Falla Property and the Del Valle Property, and established a hotel called the Starfish Cuatro Palmas on the land. (*Id.*) The government established the Memories Jibacoa Resort on the Muniz Property. (*Id.* at 3.) The Starfish Cuatro Palmas and the Memories Jibacoa are offered as lodging to visitors, including visitors who are Florida and United States residents, through online booking providers like Expedia, Inc. and Booking.com. (*Id.*)

The Defendants have allegedly trafficked in the properties by renting hotel rooms to tourists and visitors from the United States and all over the world. On August 6, 2019, the Plaintiffs sent a notice to the Defendants informing the

Defendants of their intent to commence a lawsuit unless the Defendants ceased trafficking on the Plaintiff's properties. (*Id.* at ¶ 44.) Despite notice of this suit, the Defendants have since continued to promote the hotels on the properties on their websites, which are accessible in Florida. (*Id.*)

### 2. Legal Standard

Federal Rule of Civil Procedure 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. "A court must dismiss an action against a defendant over which it has no personal jurisdiction." *Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1323-24 (M.D. Fla. 2011). To withstand a motion to dismiss, the plaintiff must plead sufficient facts to establish a prima facie case of jurisdiction over the non-resident defendant's person. *Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 F. App'x 623, 625 (11th Cir. 2010). The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). If the defendant sustains its burden of challenging the plaintiff's allegations through affidavits or other competent evidence, the plaintiff must substantiate the jurisdictional allegations in the complaint by affidavits, testimony, or other evidence of its own. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000).

"Whether the court has personal jurisdiction over a defendant is governed by a two-part analysis." *Verizon Trademark Servs.*, 810 F. Supp. 2d at 1324. First, the court must determine whether the applicable state long-arm statute is satisfied. *Future Tech. Today*, 218 F.3d at 1249. "When a federal court uses a state long-arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as would the state's supreme court." *Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265 (11th Cir. 1998); *see also Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1361 (11th Cir. 2006). Second, if the state long-arm statute is satisfied, the court must analyze "whether the exercise of jurisdiction over the defendant comports with the Constitution's requirements of due process and traditional notions of fair play and substantial justice." *Verizon Trademark Servs.*, 810 F. Supp. 2d at 1324; *Sculptchair, Inc. v. Century Arts*, 94 F.3d 623, 626 (11th Cir. 1996).

### 3. Discussion

The Plaintiffs argue that the Defendants are subject to the Court's specific under § 48.193(1)(a)(1) and § 48.193(1)(a)(2) and its general jurisdiction under § 48.193(2). The Court will address each in turn.

### A. Specific Jurisdiction under § 48.193(1)(a)(1), Florida Statutes

The Plaintiffs argue that the Court has specific personal jurisdiction over the Defendants under § 48.193(1)(a)(1), Florida Statutes, because the Defendants engage in business in Florida, and that business is related to the cause of action at issue in this case. A defendant is subject to personal jurisdiction under that subsection by "operating, conducting, engaging in, or carrying on a business venture in this state or having an office or agency in this state." § 48.193(1)(a)(1). Unless the Defendants' business activities with the forum rise to the general jurisdiction standard of "substantial and not isolated," it is not sufficient that a Defendant engages in business with the forum. "There must be a direct affiliation, nexus, or substantial connection between the basis for the cause of action and the business activity." *Brunner v. Texas A&M University 12th Man Foundation*, 2015 WL 13650035, at *4 (S.D. Fla. June 23, 2015) (Dimitrouleas, J.) (citing *Citicorp Ins. Brokers (Marine), Ltd. v. Charman*, 635 So. 2d 79, 82 (Fla. 1st DCA 1994)). Therefore, the Court must determine whether the Defendants were "operating, conducting, engaging in, or carrying on a business venture" in Florida, and whether the business venture had a substantial connection to the cause of action, or the Helms Burton claim.

"In order to establish that a defendant is 'carrying on business' for the purposes of the Florida long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Horizon Aggressive Grown, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2010). Factors relevant, but not dispositive, to this analysis include the presence and operation of an office in Florida, *id.* (citing *Milberg Factors, Inc. v. Greenbaum*, 585 So. 2d 1089, 1091 (Fla. 3d DCA 1991)), the possession and maintenance of a license to do business in Florida, *id* (citing *Hobbs v. Don Mealy Chevrolet, Inc.*, 642 So. 2d 1149, 1153 (Fla. 5th DCA 1994)), the number of Florida clients served, *id.* (citing *Milberg Factors, Inc.*, 585 So. 2d at 1091), and the percentage of overall revenue gleaned from Florida clients, *see id*. The Defendants' alleged contact with the forum is that they "solicit and accept reservations from . . . Florida residents," to stay at the resorts on the Plaintiff's confiscated properties. (ECF No. 50 at ¶¶ 36, 39.) The Second Amended Complaint does contain any allegations regarding the relevant factors. It does not say whether the Defendants have an office in Florida, whether they are licensed to do business in Florida, how many Florida clients are served, and what percent of the Defendants' revenue is gleaned from Florida clients. (*See* ECF No. 50.) The Plaintiffs, however, request in their omnibus response that the Court

take judicial notice that the Defendants are registered to conduct business in Florida. (ECF No. 64 at 8 n. 9.)[1]

The Second Amended Complaint alleges that the Expedia and Booking.com websites are "fully-interactive websites that have robust internet e-business capabilities. They have worldwide reach on the internet and are fully accessible in Florida." (ECF No. 50 at ¶ 13.) The Plaintiffs rely on *Pathman* and *Renaissance Health* for the proposition that maintaining a website that is accessible in Florida is sufficient to be considered "carrying on a business venture" under § 48.193(1)(a)(1). *Pathman v. Grey Flannel Auctions, Inc.*, 741 F. Supp. 2d 1318 (S.D. Fla. 2010) (King, J.); *Renaissance Health Publishing, LLC v. Resveratrol Partners, LLC*, 982 So. 2d 739 (Fla. 4th DCA 2008). However, these cases do not support that proposition, and, if anything, demonstrate the opposite—that merely having a website accessible in Florida is *not* sufficient. In *Pathman*, the court determined that the Defendant was conducting business in Florida because the defendant "travels to Florida several times a year in order to sell and consign auction items;" the defendant also sent catalogues "directly to Floridians presumably for their viewing and enticement to buy [d]efendants' products." *Pathman*, 741 F. Supp. 2d at 1324. The Court also considered the Defendants' call log activity and that 152 Florida residents bid in six of the defendant's auctions. *Id*. "In addition to the above-mentioned considerations," the court considered that the defendants conducted immediate, interactive sales with Florida residents through its website. *Id*. In *Renaissance Health*, the court decided that it had jurisdiction after considering that "[s]ales to Florida residents through the interactive website totaled 2.4% of [the defendant's] total gross domestic sales" and that the defendant "sold books and e-books to Florida residents realizing $2,101.83 in sales." 982 So. 2d at 742. Moreover, the court considered that the defendant could reasonably anticipate being haled into court in Florida because it disparaged its competitor, whose corporate headquarters was in Florida. *Id*. In contrast, here, the only allegations provided in the Second Amended Complaint concern the Defendants' websites being accessible in Florida.

Therefore, even if the business activity is directly linked to the cause of action in this case (which it may or may not be), the Plaintiffs have not sufficiently alleged that the Court has specific jurisdiction over the Defendants under § 48.193(1)(a)(1). Their allegations in their Second Amended Complaint (that the Defendants maintain websites accessible in Florida) and their

---

[1] The Plaintiffs also cite to an article for the proposition that one of the Defendants, Expedia, has an office in Miami, Florida, but the Plaintiffs do not explain how the Court may consider this fact. (ECF No. 64 at 9 n. 10.)

additional allegations in the response (that the Defendants are registered to do business in Florida) are insufficient to establish that the Defendants are carrying on business in Florida.

### B. Specific Jurisdiction under § 48.193(1)(a)(2), Florida Statutes

The Plaintiffs argue that this Court has specific personal jurisdiction over the Defendants under § 48.193(1)(a)(2), Florida Statutes, because they committed tortious acts within Florida. Under that subsection, "a person . . . who . . . commit[s] a tortious act within this state . . . submits himself or herself . . . to the jurisdiction of the courts of this state." Fla. Stat. § 48.193(1)(a)(2). This subsection allows courts to exercise jurisdiction over a defendant who commits a tortious act "outside the state that causes injury within Florida." *Mosseri*, 736 F.3d at 1353. According to the Plaintiffs, the tort was committed in Florida because the Plaintiffs reside in Florida and because the websites through which the Defendants rented the properties were accessible in Florida.

In making their argument, the Plaintiffs rely only on *Mosseri*, where the Eleventh Circuit held that the tort of trademark infringement caused injury in Florida because the website was accessible in Florida. 736 F.3d at 1353. However, *Mosseri* is not analogous because it involved a trademark infringement claim in which the infringement occurred through the website. In other words, the use of the website constituted the claim itself. Here, the Plaintiffs bring a Helms Burton claim, alleging that the Defendants trafficked in their confiscated property, which occurred in Cuba. Since the Plaintiffs do not cite any analogous caselaw, the Court declines to find that the it has jurisdiction under this subsection.

### C. General Jurisdiction under § 48.193(2), Florida Statutes

The Plaintiffs also argue that the Court has general jurisdiction over the Defendants. The Florida long-arm statute provides that "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). "It is clear that a very high threshold must be met in order for general jurisdiction to be exercised over a nonresident defendant in Florida. *Pathman*, 741 F. Supp. 2d at 1323 (citing *Helicopteros Nactionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (where a foreign defendant's "contacts with Texas consisted of sending its chief executive officer to Houston for a contract-negotiation session; accepting into its New York bank account checks drawn on a Houston bank; purchasing helicopters, equipment, and training services from Bell Helicopter for substantial sums; and sending personnel to Bells' facilities in

Forth Worth for training," this did not amount to continuous and systematic contact with the forum state)); *see also Estate of Fraser v. Smith*, 2007 WL 5007084, at *4-6 (S.D. Fla. Nov. 13, 2007) (Jordan, J.) (holding that general jurisdiction in Florida could not be exercised over a foreign tour operator whose contact with Florida consisted of purchasing and taking delivery of boats; sending two shareholders to negotiate the purchase of the boats; advertising in local publications; running an interactive website conducting business; sending an employee to attend a five-month course; directing an employee to attend a trade show to promote its tours; and entering into commission agreements with Florida corporations and individuals).

Here, the Plaintiffs' allegation that the Defendants run a website that is accessible in Florida falls woefully short of the required allegations to establish "substantial and not isolated activity within this state." Therefore, the Plaintiff has not alleged that the Court has general jurisdiction over the parties.

### D. Jurisdictional Discovery

Buried in the Omnibus Response, the Plaintiffs states that "if the Court were to have any doubts about the sufficiency of the defendants' Florida contacts (out of which this action arises), jurisdictional discovery would be warranted." (ECF No. 64 at 13.) The Defendants oppose the Plaintiffs' request.

"[F]ederal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729 (11th Cir. 1982). "[J]urisdictional discovery is favored where there is a genuine dispute concerning jurisdictional facts necessary to decide the question of personal jurisdiction; it is not an unconditional right that permits a plaintiff to seek facts that would ultimately not support a showing of personal jurisdiction." *In re Takata*, 396 F. Supp. 3d 1101, 1156 (S.D. Fla. 2019) (Moreno, J) (citing *Bernardele v. Bonorino*, 608 F. Supp. 2d 1313, 1321 (S.D. Fla. 2009) (Gold, J.)). The Court does not find it appropriate to defer ruling on the pending motions to dismiss in order to complete jurisdictional discovery for the following reasons.

First, the Eleventh Circuit has explained that in certain cases district courts should not "reserve ruling on [a pending] motion to dismiss in order to allow the plaintiff to look for what the plaintiff should have had—but did not before coming through the courthouse doors, even though the court would have the inherent power to do so." *Id.* (citing *Lowry v. Alabama Power Co.*, 483 F.3d 1184, 1216 (11th Cir. 2007). Here, the Plaintiffs were well-aware of the fact-intensive analysis that federal courts apply when deciding issues of personal jurisdiction over nonresident defendants. In this case, the Plaintiffs have known that the Defendants would argue that this Court lacks personal jurisdiction over

the matter since the Defendants' filed their first motion to dismiss on March 23, 2020. (ECF No. 46 at 13-17.) The Plaintiffs have already amended their complaint a number of times, and this case has been pending since June 24, 2019. (*See* ECF Nos. 1, 5, 15, 50.) Nevertheless, the Plaintiffs have failed to investigate, collect, and allege sufficient facts prior to responding to the motion to dismiss. The Plaintiffs include some facts in the motion to dismiss (for example, that Expedia has an office in Florida) that it does not include in its Second Amended Complaint. The Court is unsure how to consider this fact because the Plaintiffs do not attach a sworn declaration containing these jurisdictional facts, nor do they ask the Court to take judicial notice of these facts.

Second, there is no genuine factual dispute concerning personal jurisdiction because none of the parties submitted affidavit or declaration evidence in support of, or in opposition to, the exercise of personal jurisdiction over the Defendants. Without such a dispute, the Court need defer ruling on the otherwise extensively briefed Motions to Dismiss after the Plaintiffs have had at least three attempts to adequately plead jurisdiction. *See Bernardele*, 608 F. Supp. 2d at 1321 ("[J]urisdictional discovery is favored where there is a genuine dispute concerning jurisdictional facts necessary to decide the question of personal jurisdiction . . ."); *Peruyero v. Airbus, S.A.S.*, 83 F. Supp. 3d 1283, 1290 (S.D. Fla. 2014) (Cooke, J.) (denying request for jurisdictional discovery and granting motion to dismiss for lack of specific jurisdiction where there was "no genuine dispute on a material jurisdictional fact"); *see also In re Takata*, 396 F. Supp. 3d at 1156 (denying request for jurisdictional discovery because there is no personal jurisdiction factual dispute since "none of the parties submitted affidavit or declaration evidence.")

Third, Plaintiffs' hedged request is procedurally improper. Instead of formally moving the Court to defer ruling on the pending Motions to Dismiss, Plaintiffs bury their request in their Omnibus Response, and the Plaintiffs condition their request upon the Court having "any doubt about the sufficiency of defendants' Florida contacts." (Resp. ECF No. 64 at 23.) This is not the proper way to request jurisdictional discovery. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1280-81 (11th Cir. 2009) (affirming district court's denial of jurisdictional discovery where the plaintiff "never formally moved the district court for jurisdictional discovery but, instead, buried such requests in its briefs as a proposed alternative to dismissing [defendant] on the state of the current record."); *see also, In re Takata*, 396 F. Supp. 3d at 1156. For these reasons, the Plaintiffs' informal request for jurisdictional discovery is denied.

### 4. Conclusion

In sum, the Court **grants** the Defendants' motions to dismiss (**ECF Nos. 52, 53**) without leave to amend.[2] The Plaintiffs have had multiple opportunities to plead jurisdiction and have failed to do so. Further, the Plaintiffs have not requested leave to amend; nor have they indicated in their response to the Defendants' motion any inclination whatsoever to do so. *Wagner v. Daewoo Heavy Industries Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."); *Avena v. Imperial Salon & Spa, Inc.*, 17-14179, 2018 WL 3239707, at *3 (11th Cir. July 3, 2018) ("[W]e've rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend.")

The Court directs the Clerk to **close** this case. Any pending motions are denied as moot.

**Done and ordered** at Miami, Florida, on May 22, 2020.

_____
Robert N. Scola, Jr.
United States District Judge

---

[2] The Court also notes that it would be futile for Angelo Pou (and possibly for Enrique Falla) to amend their complaint because they do not appear to have actionable ownership interests. *See Gonzalez v. Amazon*, 2020 WL 2323032 (S.D. Fla. May 11, 2020) (Scola, J.).